UNITED STATES of America,
Plaintiff–Appellant,

v.

William Harold JOHNSON,
Defendant–Appellee.

No. 92–5172.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1992.

Decided Nov. 6, 1992.

Rehearing and Rehearing En Banc
Denied Jan. 21, 1993.

Cam Towers Jones, Asst. U.S. Atty. (argued & briefed), Memphis, Tenn., for U.S.

Bruce Brooke (argued & briefed), Neely, Green, Fargarson & Brooke, Memphis, Tenn., for defendant-appellee.

Before: MARTIN and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.

SUHRHEINRICH, Circuit Judge.

Defendant William Harold Johnson pled guilty pursuant to a plea agreement to one count of bank fraud in violation of 18 U.S.C. § 1344, and one count of mail fraud in violation of 18 U.S.C. § 1341. At sentencing, the district court granted a downward departure based on alleged diminished mental capacity due to a mental disorder known as Severe Adjustment Disorder. The government appeals, claiming that the lower court improperly deviated from the written plea agreement; and that the basis for departure, that defendant's actions were "out of character for a person of Mr. Johnson's standing," is not a permissible basis for departure under U.S.S.G. § 5K2.13 p.s. For the reasons that follow, we conclude that while the court did not err in allowing defendant to attempt to establish a downward departure under § 5K2.13 p.s., the circumstances of this case do not warrant one. We therefore VACATE and REMAND for resentencing.

I.

As part of his job duties as Senior Vice President of Information Services at the First Tennessee National Bank in Memphis, Tennessee, defendant was responsible for interbank wire transfers and communications, which gave him access to millions of dollars in the bank's system. Johnson devised a scheme to defraud First Tennessee by submitting fictitious invoices from real and imaginary companies to the bank. Johnson, in his capacity as bank official, would then authorize the requests for pay-

ment. The checks were later deposited in one of his accounts at Deposit Guaranty National Bank, Corporate Headquarters, in Jackson, Mississippi.

Two of the names utilized by defendant as authorized signers at Deposit Guaranty were "Eugene Keller" and "Keith Nichols." Johnson claimed that he got the idea to use their names after Keller and Nichols allegedly defrauded defendant in a real estate transaction which resulted in litigation over property lines. Neither individual had authorized Johnson to use their names and neither profited thereby.

First Tennessee eventually learned of the fraud and criminal proceedings were instituted. Defendant entered into a written plea agreement with the government pursuant to Fed.R.Crim.P. 11(e)(1)(B). The district court accepted defendant's guilty plea and the written agreement. A presentence report was prepared, indicating a guideline range of 16, a term of 21 to 27 months imprisonment. Defendant filed a response, stating that the total offense level should be 13, and in combination with a criminal history category of I, a guideline range of 12 to 18 months imprisonment. Attached to defendant's response was the affidavit of psychologist, Dr. John Cooper, who treated Johnson for adjustment disorder.

Dr. Cooper testified at the sentencing hearing on behalf of the defendant. The district court granted a downward departure for defendant's "diminished mental capacity" reducing his sentence below the guidelines range of 21 to 27 months to 12 months, followed by a three-year term of supervised release. The government appeals.

1. Fed.R.Crim.P. 11(e)(3) provides:
    (3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

2. The Guidelines make acceptance of the plea agreement necessarily contingent upon the preparation and consideration of the presentence report, U.S.S.G. § 6B1.1(c) & comment.

## II.

### A.

The government contends that the district court's grant of a downward departure was impermissible since the parties had not agreed to such a departure; and that the written plea agreement by its terms did not allow the district court to modify the agreement. The government therefore argues that the district court exceeded its statutory authority under Fed. R.Crim.P. 11(e)(3),[1] which prohibits a district court from sentencing a defendant to a sentence more favorable than that provided for in the plea agreement and accepted by the court. *United States v. Semler*, 883 F.2d 832, 833 (9th Cir.1989).

This court has consistently held that "a defendant's plea agreement consists of the terms revealed in open court...." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.) (where district court followed Rule 11 procedures, defendant was bound by his statements in response to district court's inquiries at sentencing hearing and would not be allowed to attempt to prove that agreement was otherwise than it appeared on unambiguous record), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v. Herrera*, 928 F.2d 769, 771–72 (6th Cir.1991) (defendant was not allowed to establish existence of separate agreement where neither defendant nor his attorney mentioned any additional terms when asked about their understanding of the written agreement submitted to court; citing *Baker*). Further, failure to object to a defendant's statements at sentencing constitutes waiver of any objection. *Baker*, 781 F.2d at 90. *See also Herrera*, 928 F.2d at 771–72.[2]

See also *Fields v. United States*, 963 F.2d 105 (6th Cir.1992) (rejecting defendant's argument that once the district court unqualifiedly agreed to accept the initial guilty plea, it was bound by that bargain); *United States v. Kemper*, 908 F.2d 33 (6th Cir.1990) (same). Therefore, after the Guidelines, a court may not accept the plea agreement until it has considered the presentence report.

■ At the sentencing hearing, the court asked the government to describe the contents of the plea agreement. The government explained that the sentencing would be "within the guideline language." Defense counsel agreed with the characterization, but then asked the court if it had the right to establish a basis for a deviation. The government made no objection to the request. The court allowed defense counsel to proceed with proofs as to defendant's diminished mental capacity. By failing to object at the crucial moment when the trial court inquired as to terms of the agreement, the government has waived its claim. *Herrera,* 928 F.2d at 772; *Baker,* 781 F.2d at 90. To rule otherwise would thwart the sentencing court in the proper administration of the plea agreement procedure. *Id.*

■ Additionally, we note an ambiguity in the written plea agreement itself. The pertinent language provides:

> This Plea Agreement is entered pursuant to the provisions of Rule 11(e)(1)(B) of the *Federal Rules of Criminal Procedure,* it being the intent of the parties that the Court may accept or reject this agreement immediately or after it has an opportunity to consider the presentence report, but may not modify the agreement.
>
> The defendant will receive a sentence within the range of the Sentencing Guidelines, as established by the Probation Office of the Court.

The government argues that the stated terms in the agreement that the court may accept or reject the agreement operates to make it a Rule 11(e)(1)(C)[3] plea, except that a specific sentence was not agreed upon. On the other hand, the descriptive paragraph of the written agreement character-izes it as a Rule (e)(1)(B)[4] agreement, wherein the plea agreement makes a recommendation or agrees not to oppose the defendant's request for a particular sentence with the understanding that such recommendation shall not be binding upon the court. Given the "hybrid" nature of the written agreement, it was not unreasonable for the sentencing court to assume from the government's silence that it had "agree[d] not to oppose the defendant's request for a downward departure." If that were the case, the court would not be altering the terms agreed to by the parties in granting a downward departure.

■ This ambiguity must be construed against the government. Although plea agreements are contractual in nature, *Herrera,* 928 F.2d at 771; a defendant's underlying right of contract is constitutional, and therefore implicates concerns in addition to those pertaining to the formation and interpretation of commercial contracts between private parties. *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986). Therefore,

> [b]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in the plea agreements. *See, e.g., United States v. Bowler,* 585 F.2d 851, 854 (7th Cir.1978) (plea agreement not appropriate context for "rigidly literal" construction of language); *Palermo v. Warden,* 545 F.2d 286, 295 (2d Cir.1976) (government invocation of restrictive contract principles "disingenuous"); *United States v. Crusco,* 536 F.2d 21, 26 (3rd Cir.1976) (government's "strict and nar-

---

**3.** Fed.R.Crim.P. 11 provides in relevant part:
   (e) Plea Agreement Procedure.
   (1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
   (A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
   (C) agree that a specific sentence is the appropriate disposition of the case.
The court shall not participate in any such discussions.

**4.** *See id.*

row interpretation of its commitment ... untenable"); *Correale v. United States,* 479 F.2d 944, 947 (1st Cir.1973) (government held to "meticulous standards of both promise and performance").

*Id.* at 300–01 (*cited favorably in Herrera,* 928 F.2d at 772). *See also Carnine v. United States,* 974 F.2d 924 (7th Cir.1992) ("Our cases firmly establish an expectation that the government draft plea agreements with particular care and precision to avoid exactly the type of definitional pitfalls we encounter here."). The government in this case has failed to live up to its "primary responsibility of insuring precision in the agreement." *Id.* at 301. Thus, for the foregoing reasons we hold that the district court did not err in allowing evidence establishing the basis for a downward departure under U.S.S.G. § 5K2.13 p.s.

### B.

The government next argues that the district court abused its discretion in making a downward departure for diminished mental capacity under U.S.S.G. § 5K2.13 p.s. At the sentencing hearing defendant introduced the testimony of a psychologist with whom defendant had treated. Dr. Cooper diagnosed Johnson as suffering from Severe Adjustment Disorder, a mental condition brought on by an identifiable psycho-social stressor. Dr. Cooper theorized the psycho-social stressor as the receipt of a registered letter advising Johnson that the cabin he had recently purchased from Nichols and Keller was over the property line. The doctor testified that a personality like Johnson's—"very perfectionistic," "very compatible with high levels of achievement in business"—has "not as much energy available to deal with emotion." The doctor opined that as a result, defendant had less psychological skill in handling the rage and anger over "being duped," which he "ventilated" in illegal activity.

On the basis of this testimony and letters from friends and associates of Johnson, attesting to his integrity, the district court stated:

The court is going to give Mr. Johnson some benefit flowing from the concept of diminished capacity based upon the court's finding that this was so out of character for a person of Mr. Johnson's standing in the community and the kind of life he has lived, and based upon all the testimony the court has heard and the letters that were submitted ... and what the court is going to do is deviate downwards from the guidelines....

■ We review[5] downward departures from the federal sentencing guidelines under a three-part test: (1) whether the case is sufficiently unusual to warrant departure, a legal question subject to de novo review; (2) whether the circumstances, if legally sufficient, are actually present, a factual question subject to a clearly erroneous standard of review; and (3) whether the direction and degree of departure is reasonable. *United States v. Harpst,* 949 F.2d 860, 862 (6th Cir.1991).

■ Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the guidelines. U.S.S.G. § 5H1.3 p.s. However, § 5K2.13 p.s. allows a downward departure for diminished mental capacity:

If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

■ Our initial inquiry is whether a diagnosed condition of adjustment disorder is "sufficiently unusual to warrant departure." This court has rejected suicidal tendencies as a basis for permitting departures under § 5K2.13 p.s., *United States v. Harpst,* 949 F.2d at 863; and a gambling disorder, *United States v. Hamilton,* 949 F.2d 190, 193 (6th Cir.1991). In *Harpst,* we

5. We have jurisdiction pursuant to 18 U.S.C.   § 3742(b).

found "a rule permitting departures on the basis of defendants' avowed self-destructive tendencies ill-advised," since such claims might become virtual boilerplate in defendants' arguments before sentencing judges. 949 F.2d at 863. We also noted that the defendant's claim in that case was "particularly weak," since there had been testimony that Harpst's suicidal tendency had abated and that his prognosis for dealing with self-destructive tendencies was "good". *Id.* at 863–64. In *Hamilton*, this court rejected the defendant's argument that his gambling disorder caused him to suffer a "significantly reduced mental capacity" within the meaning of § 5K2.13 p.s. since the defendant "was able to absorb information in the usual way and to exercise the power of reason." 949 F.2d at 193. The court concluded there that the defendant took to selling drugs illegally not because of any inability to understand his situation, but because he needed money, "hardly an unusual motive." *Id.*

Similarly, we believe that the instant case does not present a situation "sufficiently unusual" to justify departure. Like the defendants in *Harpst* and *Hamilton*, there is no indication that Johnson was unable to process information or to reason.[6] To the contrary, from all accounts, defendant displayed considerable mental agility in his professional and personal affairs, both legal and illicit. Like the defendant in *Hamilton*, Johnson's "behavior" is easily explained by greed, which is not a sufficient basis for departure. The many letters attesting to Johnson's upstanding qualities and seeming "normality" also belie any contention that his psychological infirmity was "significant." Moreover, we also think it "ill-advised" to excuse a defendant's unlawful conduct merely because he has suffered insult or hardship and experienced frustration and anger as a result. Such a ruling would entitle virtually every defendant to a downward departure, since an inescapable aspect of human existence is misfortune or defeat.

Furthermore, assuming without deciding that in a given instance a Severe Adjustment Disorder diagnosis would satisfy § 5K2.13 p.s., the defendant failed to establish the existence of such a condition. We take judicial notice of the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (3d ed. rev. 1987), which defines an Adjustment Disorder as "a maladaptive reaction to an identifiable psycho-social stressor, or stressors, that occurs within three-months after onset of the stressor and has persisted no longer than six months." *Id.* at 329. The alleged "triggering event," in this case, receipt of the registered letter, occurred in August of 1990. On the other hand, the indictment alleges, the government offered supporting documentation establishing, that as early as September 19, 1988, defendant submitted fictitious invoices from the Mitchell Group to First Tennessee. Thus, the illegal activity cannot reasonably be described as a "reaction" to the real estate fraud. Similarly, there is no basis for finding that the "reduced mental capacity *contributed to* the commission of the offense." U.S.S.G. § 5K2.13 p.s. (emphasis added). Finally, the fact that the fraudulent scheme lasted for over two years also precludes it from being characterized as an Adjustment Disorder as defined.

In sum, we conclude that the district court erred in finding that defendant's situation presented a sufficient basis for downward departure. Therefore, we VACATE and REMAND for resentencing with instructions to recalculate defendant's sentence in light of this ruling.

BOYCE F. MARTIN, JR., Circuit Judge, concurring.

This case presents an unusual situation because of the introduction of testimony

---

**6.** Defendant's reliance on *United States v. Glick*, 946 F.2d 335 (4th Cir.1991) is misguided. In *Glick*, a psychiatrist testified that "Glick had no conscious control over the things that were going on inside him to a certain limit," and that the disorder impaired his ability to cope with stress. *Id.* at 339. Here, in contrast, Dr. Cooper testified that as far as Johnson's general character was concerned, he was in complete control and knew what he was doing.

regarding the defendant's mental state at the time the offense was committed. I join with Judge Suhrheinrich in his majority opinion because I think in light of all the circumstances of this case the result he reaches is fair and just under the Sentencing Guidelines. I therefore join in the whole of the majority opinion agreeing that the case should be remanded to the district court for resentencing with the understanding that on this record the defendant has not met his burden of proving that there is a sufficient departure from normal mental capacity to warrant a reduction from the guideline range of twenty-one to twenty-seven months in prison.

WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part.

I am in agreement with part II.B. of Judge Suhrheinrich's opinion and would therefore concur in the reversal and remand for resentencing based on the district court's erroneous acceptance of the belated claim of "diminished mental capacity" under U.S.S.G. § 5K2.13, p.s. Whether the district court's action in departing downward on this basis was an abuse of discretion or merely an erroneous determination unsupported by the evidence is not important—the result is the same. I agree with the conclusion that there was no adequate medical or expert diagnosis to support defendant's claim of diminished mental capacity over the extended period of time he was devising, executing, and concealing a complicated fraudulent scheme against the bank in which he served as a responsible officer.

I would not adopt the rationale of part II.A. of the opinion. If there were an ambiguity in the plea agreement, I could not find on this record a reasonable basis for district court to assume that the government somehow "agree[d] not to oppose the defendant's request for a downward departure." It seems clear that the parties agreed that Johnson would "receive a sentence *within the* range of the Sentencing Guidelines." (emphasis added).

I concur, then, in the result reached that the matter of sentencing within the guideline range be remanded to the district court.