7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen A. LEGG, Defendant-Appellant.
 No. 93-5323.
 United States Court of Appeals, Sixth Circuit.
 Oct. 4, 1993.
 
 Before: MILBURN and NELSON, Circuit Judges; and GILMORE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Stephen A. Legg appeals from the sentence of the district court which committed him to imprisonment for 12 months upon his guilty pleas to five counts of an indictment charging him with various offenses arising out of a gambling operation. The sole issue on appeal is whether the district court erred in its determination that it had no authority to place defendant on probation and order home detention or community confinement as conditions thereof. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 Defendant Legg and 17 co-defendants were named in an 80-count indictment that charged a conspiracy to commit gambling offenses (18 U.S.C. § 371) and concomitant substantive offenses, including using an interstate wire in gambling operations (18 U.S.C. § 1084(a)) and failure to file tax returns (26 U.S.C. § 7203). Legg entered pleas of guilty to five counts of the indictment pursuant to a plea agreement stating that "[p]ursuant to Rule 11(e)(1)(c)," the United States, in exchange for Legg's pleas, would "recommend a sentence of imprisonment at the highest end of the appropriate Guideline Range...." The United States also agreed to "recommend" a fine and a two-level reduction for Legg's acceptance of responsibility.
 
 
 3
 The court and parties agreed that the appropriate guideline range in this case was 6 to 12 months. At his sentencing, Legg argued that the appropriate guideline range was within Zone B of the Sentencing Table on account of which he was eligible for probation under United States Sentencing Guidelines ("U.S.S.G.") § 5C1.1(c)(3). This section provides:
 
 
 4
 If the applicable guideline range is in Zone B of the sentencing table, the minimum term may be satisfied by--
 
 
 5
 * * *
 
 
 6
 (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).
 
 
 7
 The district court refused to consider probation because it thought itself bound by the plea agreement to give a "sentence of imprisonment," and, accordingly, it sentenced defendant Legg to twelve months imprisonment. The court did indicate at sentencing, however, that the result might be different were the court not bound by the plea agreement.
 
 
 8
 MR. MCCALL [defense counsel]: Well, if you're wrong, I'm confronted with proving you wrong, because I believe you're wrong, in changing your mind. We've got a discretion. If the Court of Appeals says that you're in error are you going to change the sentence is what I'm asking you or would it make a difference to you?
 
 
 9
 THE COURT: Yes, it would.
 
 J.A. 103-04. The court went on to state:
 
 10
 And I put in the record here that this defendant is in a different position from other defendants who have appeared here in as much as he has demonstrated an ability to make a living and as part of the record his employer finds him highly satisfactory and has given him a management position. So that the, despite the plea agreement, interest of justice may have already been served. I make that part of the record and you can file a notice of appeal.
 
 
 11
 J.A. 104-05.
 
 
 12
 Before the district court entered judgment, defendant moved the court to reconsider its announced sentence. The court denied the motion, entered judgment in accordance with its announcement, and this timely appeal followed.
 
 II.
 
 13
 Defendant argues that the district court erred in viewing the plea agreement as one made under Federal Rule of Criminal Procedure 11(e)(2)(C) instead of under Rule 11(e)(2)(B). A plea agreement under Rule 11(e)(2)(C) commits the attorney for the government to "agree that a specific sentence is the appropriate disposition of the case," whereas an agreement under Rule 11(e)(2)(B) merely commits him to "make a recommendation ... for a particular sentence, with the understanding that such recommendation ... shall not be binding upon the court...." If defendant is correct in his position that the plea agreement was a subsection (B) agreement, then the district court would not have been bound to sentence him to imprisonment, but would have been free to reject the government's recommended sentence and then, because the appropriate guideline sentence (6 to 12 months) fell within Zone B of the Sentencing Table, to sentence defendant to probation with confinement conditions such as community confinement or home detention as authorized by U.S.S.G. § 5C1.1(c)(3).
 
 
 14
 Defendant's argument raises a question about the interpretation of the plea agreement in this case. Because plea agreements are "contractual in nature," United States v. Johnson, 979 F.2d 396, 399 (6th Cir.1992), a district court's construction of a plea agreement presents a question of law which this court reviews de novo. Dayton Power & Light Co. v. FERC, 843 F.2d 947, 954 (6th Cir.1988); Lancaster Glass Corp. v. Phillips ECG, Inc., 835 F.2d 652, 658 (6th Cir.1987).
 
 
 15
 The government takes the position that the plea agreement in question was a subsection (C) agreement, which became binding on the court once it was accepted, because the agreement recites that it was made under the provisions of Rule 11(e)(2)(C). The defendant, however, points out that the language of the plea agreement is couched in terms of the government's obligation to make a recommendation as to sentence.[1] Defendant argues that this precatory language indicates that the agreement was a subsection (B) agreement, which did not obligate the district court to sentence in any particular way and left it perfectly free to reject the government's recommendation of imprisonment at the highest end of the appropriate range.
 
 
 16
 There is ambiguity in the plea agreement. While the preamble to the agreement recites that it was made under subsection (C), it does not contain the crucial language of subsection (C), i.e., "appropriate disposition of the case." Instead, the agreement is couched in terms of a recommended sentence, the key language of subsection (B). A similar problem arose in United States v. DeBusk, 976 F.2d 300, 303 (6th Cir.1992), wherein the plea agreement recited that it was made under subsection (C), but its terms contained only a recommended sentence. The district court ignored the subsection (C) recitation and interpreted the sentencing terms of the agreement as made under subsection (B). This court necessarily agreed with that interpretation, because it went on to deal with other issues that would not have existed if the agreement had been construed as a subsection (C) agreement. Thus, the rule that may be distilled from DeBusk, though not part of its holding, is that the language of an agreement setting out the undertaking of the government will ordinarily control over any reference to a particular subsection of Rule 11(e)(2). If the government undertakes to recommend a sentence, the agreement is made under subsection (B) notwithstanding any reference to subsection (C).[2] If that rule is applied to this case, Legg's plea agreement must be construed to be a subsection (B) agreement involving only a recommendation of sentence. Therefore, the district court was not bound to sentence Legg in any particular way, and it could have considered probation with the attendant conditions mentioned in U.S.S.G. § 5C1.1(c)(3).
 
 
 17
 Moreover, in cases where plea agreements have been found to be ambiguous, courts construe the agreements against the government. In United States v. Johnson, 979 F.2d 396 (6th Cir.1992), this court had to construe a plea agreement that recited its formation under subsection (B), but contained no recommendation of sentence and instead used language suggestive of a subsection (C) agreement. The court announced no rule of construction to operate on the language of the agreement. Rather, without parsing the language, we held:
 
 
 18
 This ambiguity must be construed against the government. Although plea agreements are contractual in nature, a defendant's underlying right of contract is constitutional, and therefore implicates concerns in addition to those pertaining to the formation and interpretation of commercial contracts between private parties. Therefore,
 
 
 19
 [b]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in the plea agreements.
 
 
 20
 Id. at 399 (citations omitted). Finding that "the government in this case has failed to live up to its 'primary responsibility of insuring precision in the agreement,' " id. at 400, this court simply adopted the defendant's construction of the ambiguous agreement. The Fourth Circuit has stated a similar rule in United States v. Harvey, 791 F.2d 294, 300-01 (4th Cir.1986). Construing the plea agreement in this case against the government results in a finding that the agreement was a subsection (B) agreement. This finding requires the conclusion that the district court erred in refusing to consider probation with certain conditions as provided by U.S.S.G. § 5C1.1(c)(3).
 
 
 21
 The government relies entirely on United States v. Kemper, 908 F.2d 33, 36 (6th Cir.1990), a reliance entirely misplaced in that the plea agreement in Kemper was not ambiguous. There was no misleading preambulary reference to a subsection of Rule 11(e)(2); the agreement called for a particular sentence "at the low end" of the range to be computed upon certain stipulated facts regarding the amount of drugs involved; and there was no precatory language present to indicate that a mere recommendation of sentence was intended by the parties. Kemper is simply inapposite to this case.
 
 
 22
 Finally, if the plea agreement in this case is regarded as one made under subsection (B), and if, therefore, the district court was free to reject it and consider all the options available under the Guidelines, there is no doubt but that the court could have considered probation. The appropriate guideline range fell within Zone B of the Sentencing Table, thus triggering the provisions of U.S.S.G. § 5C1.1(c)(3). See United States v. Rosengard, 949 F.2d 905, 908 (7th Cir.1991), cert. denied, 112 S.Ct. 2939 (1992); United States v. Pippin, 903 F.2d 1478, 1482 (11th Cir.1990). Because the district court misconstrued the plea agreement in this case, it unduly limited its sentencing options in a situation where there is some indication that the court might have wished to consider a more lenient sentence than the one it imposed.
 
 III.
 
 23
 For the reasons stated, the judgment of sentence of the district court is REVERSED, and the case is REMANDED to the district court with instructions to resentence defendant according to its preferences under U.S.S.G. § 5C1.1.
 
 
 
 *
 Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Following oral argument, the government questioned, for the first time, whether the plea agreement in the joint appendix was the plea agreement actually filed with the district court. The government's attorney has now furnished the court with a copy of a plea agreement from its file signed on September 30, 1992, by A. Duane Schwartz, Assistant U.S. Attorney, the defendant and defendant's counsel, John Tim McCall. We have now checked the record in the district court and asscertained that the copy of the plea agreement furnished by the government's attorney is identical to the plea agreement filed in district court September 30, 1992
 For the purposes of our decision, there is no material difference in the plea agreement in the joint appendix and the signed plea agreement filed with the district court on September 30, 1992, as both documents contain language couched in terms of "recommendations" as opposed to appropriate dispositions with regard to sentencing.
 
 
 [2]
 Some cases speak in terms of "binding" or "non-binding" recommendations to distinguish between subsection (C) and (B) agreements, respectively. See United States v. Snyder, 913 F.2d 300, 302 (6th Cir.1990), cert. denied, 498 U.S. U.S. 1039 (1991); United States v. Edgecomb, 910 F.2d 1309, 1310 (6th Cir.1990). In a sense, of course, it is true that all plea agreements are mere recommendations to the court because the court is free to reject them