**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David John MURDOCH, Defendant–
Appellant. (Two Cases)**

Nos. 94–10434, 95–10417.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 15, 1996.

Decided Oct. 16, 1996.

Franny A. Forsman, Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Will B. Mattly and Jamon A. Jarvis, Assistant United States Attorneys, Las Vegas, NV, for plaintiff-appellee.

Before: THOMPSON and KLEINFELD, Circuit Judges, and WILSON, District Judge.*

Opinion by Judge THOMPSON; Concurrence by Judge WILSON.

DAVID R. THOMPSON, Circuit Judge:

OVERVIEW

David John Murdoch was indicted on two counts of attempted murder, in violation of 18 U.S.C. § 1113, and two counts of use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). Murdoch was found not guilty by reason of insanity

---

* Honorable Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation.

and was committed to a medical detention facility for an assessment.

After considering two risk assessment reports, the district court determined that Murdoch is presently suffering from a mental disease or defect and, as a result of this mental disease or defect, Murdoch poses a substantial risk of injury to others. Accordingly, the district court ordered Murdoch committed to the custody of the Attorney General.

Murdoch appeals that decision, arguing the district court erred by determining that he is suffering from a present mental disease or defect. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

Murdoch, a citizen of Great Britain, traveled to the United States to commit suicide. He was overwhelmed by life "stressors" involving his relationships, work, and money, and felt he was a failure at everything. He obtained a gun and went to Lake Mead National Recreation Area to kill himself.

Murdoch found an isolated cove and began preparing to kill himself. During this time, a couple arrived at the cove to camp and fish. Murdoch left the cove, but returned later and began shooting at the couple, wounding both of them.

Four days later, Murdoch turned himself in to the police department. A federal grand jury returned an indictment charging Murdoch with two counts of attempted murder and two counts of use of a firearm in relation to a crime of violence. Murdoch raised a defense of insanity. He underwent psychological testing and was diagnosed as having: (1) an adjustment disorder with depressed mood arising from psychological stress he had experienced in the last year, and (2) a dissociative disorder with decreased conscious awareness. Experts for the defense and the prosecution agreed that, at the time of the shooting incident, Murdoch was legally insane because he was unable to distinguish right from wrong.

The prosecution stipulated to Murdoch's insanity at the time of the shooting. The district court entered a verdict of not guilty by reason of insanity and ordered Murdoch committed to a medical facility for assessment. Pursuant to 18 U.S.C. § 4243(b), a risk assessment panel was convened to prepare a report addressing whether Murdoch's release from custody would present a substantial risk of injury to others as a result of a present mental disease or defect. The panel consisted of two psychologists and a psychiatrist.

The panel prepared a risk assessment report and, in this report, opined that Murdoch suffers from a "Personality Disorder, Not Otherwise Specified with Narcissistic and Passive–Aggressive traits." The panel stated that this personality disorder "could affect his propensity to commit future acts of violence given the right circumstances" and Murdoch "could perceive future situations in a manner that would lead to similar dissociative episodes with possible violent acting out."

The panel commented that, at the time of the shooting incident, Murdoch was under severe stress and, due to his personality disorder, lacked the ability to cope with the stress. The panel further noted that, if released, Murdoch would face not only the same stressful problems that existed at the time of the shooting incident, but he would face the additional stress of "no job, no permanent home, and the possible stigma of having been arrested and found insane to Attempted Murder charges."

The panel stated that, if the district court found a personality disorder could legally constitute a mental disease or defect, the panel would suggest that Murdoch presents a risk to others due to a mental disease or defect. Conversely, if the district court determined that a personality disorder could not legally constitute a mental disease or defect, then Murdoch would not present a risk to others *based on* a mental disease or defect.

Pursuant to 18 U.S.C. § 4243(c), the district court held a status hearing to determine whether Murdoch should be committed to the custody of the Attorney General. The district court determined that Murdoch had "failed to prove by clear and convincing evi-

dence that his release will not pose a substantial risk of injury to ... another person due to a present mental disease or defect." The district court reasoned that, although Murdoch was not currently displaying symptoms of a mental illness, if released from custody, Murdoch would be under the same stress that led him to commit the violent acts. The district court found that Murdoch's "disassociative state," when combined with stress, results in an inability to appreciate right from wrong. Therefore, the district court determined that Murdoch's personality disorder constitutes a mental disease or defect which presents a substantial risk of danger to others and ordered Murdoch committed. Murdoch appealed that ruling to this court.

While that appeal was pending, the panel prepared a second risk assessment report. In an unpublished order, we remanded the case to the district court so that the court could consider the second report.

The panel's findings in the second report were substantially the same as in the first report. In the second report, the panel opined that Murdoch "is not regarded as having a major mental disease or defect at this time, but is viewed as having a personality disorder with narcissistic and passive-aggressive traits." The panel reiterated its belief that if the district court found a personality disorder could legally constitute a mental disease and if Murdoch was released without assurances that he would comply with stringent conditions, Murdoch could present a danger to others.

The district court held a second hearing to address the latest report. At the hearing, members of the risk assessment panel testified that although personality disorders are not generally considered to be mental diseases or defects, the district court could consider Murdoch's personality disorder to be a mental disease or defect. Based on the second report and the testimony at the hearing, the district court determined that Murdoch had failed to present evidence warranting a revision of the court's prior order. The court reaffirmed its decision that Murdoch presently suffers from a mental disease or defect which poses a risk of danger to others. Murdoch appeals that ruling.

## DISCUSSION

The issue on appeal is narrow. Murdoch does not dispute the panel's and the district court's findings regarding his dangerous propensity. Murdoch argues only that he is not presently suffering from a mental disease or defect.

### A. Standard of Review

The parties dispute the applicable standard we apply in reviewing the district court's determination under 18 U.S.C. § 4243 that a person suffers from a "mental disease or defect."

In other contexts, we have concluded that whether a person is suffering from a mental disease is a question of fact. *United States v. Smeaton*, 762 F.2d 796, 798 (9th Cir.1985) (concluding jury determines whether defendant is sane). Other circuits also have concluded that the determination of whether a person is suffering from a mental disease is a factual issue, subject to the clearly erroneous standard of review. *United States v. Jackson*, 19 F.3d 1003, 1006 (5th Cir.) (interpreting section 18 U.S.C. § 4243), *cert. denied*, —— U.S. ——, 115 S.Ct. 237, 130 L.Ed.2d 160 (1994); *United States v. Prescott*, 920 F.2d 139, 146 (2nd Cir.1990) (interpreting 18 U.S.C. § 4244(d)); *United States v. Steil*, 916 F.2d 485, 487–88 (8th Cir.1990) (interpreting 18 U.S.C. § 4246).

■■■ Whether a person is suffering from a mental disease or defect is primarily a factual determination. The district court is in the best position to judge the credibility of the witnesses and to assess the evidence in a hearing under 18 U.S.C. § 4243. Therefore, we conclude that whether a person is suffering from a mental disease or defect under section 4243 presents a question of fact, subject to the clearly erroneous standard of review.

■■■ "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prods. v. Const. Laborers Pension*

*Trust,* 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993). If the district court's finding is "plausible in light of the record viewed in its entirely," we may not reverse the district court's finding simply because we "would have weighed the evidence differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

B.   Mental Disease or Defect

Murdoch argues there is no factual basis for a finding that he is suffering from a present mental disease or defect. He argues the evidence shows only that, in the future, he may suffer from a mental disease or defect which could result in violent activity. We reject this argument.

Section 4243 provides:

a person found not guilty only by reason of insanity of an offense involving bodily injury to ... another person ... has the burden of proving by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person ... due to a present mental disease or defect.

18 U.S.C. § 4243(d). If the district court finds the person has not met this burden, the district court "shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4243(e). The person's mental status is reviewed on an annual basis to determine whether continued confinement is justified.

■■ If the person has dangerous propensities, but these propensities are not the result of a mental disease or defect, continued confinement is not justified under section 4243. *See Foucha v. Louisiana,* 504 U.S. 71, 77, 112 S.Ct. 1780, 1784, 118 L.Ed.2d 437 (1992); *Overholser v. O'Beirne,* 302 F.2d 852, 854–55 (D.C.Cir.1962). A person found not guilty by reason of insanity "may be held as long as he is both mentally ill and dangerous, but no longer." *Foucha,* 504 U.S. at 77, 112 S.Ct. at 1784. Therefore, even though Murdoch concedes he has dangerous propensities, his continued confinement under section 4243 is not permitted unless these propensities are the result of a present mental disease or defect.

■ At oral argument, Murdoch conceded that a personality disorder can constitute a mental disease or defect under certain circumstances. Murdoch, however, argues he is not suffering from a present mental disease or defect because he is not currently behaving in a violent manner. We conclude that Murdoch has not met his burden to prove by clear and convincing evidence that his release would not pose "a substantial risk of bodily injury to another person ... due to a present mental disease or defect." 18 U.S.C. 4243(d). Murdoch's argument erroneously focuses on the symptoms or side-effects of his mental disease rather than on the existence of the disease itself.

Because Murdoch is in confinement, he is in a controlled environment. He also is receiving treatment. Simply because Murdoch is not in a situation in which he will react dangerously does not mean that he no longer suffers from a mental disease which causes his dangerous propensities.

While in the mental health facility, Murdoch is insulated from the stress which triggered his acts of violence. The evidence established that if he were released he would confront the same or similar stress which led to his previous violent behavior. It is clear that Murdoch's personality disorder impairs his ability to cope with stress. Thus, until Murdoch can prove by clear and convincing evidence that he no longer suffers from a mental disease or defect or that, although he suffers from a mental disease or defect he can be released under conditions which would eliminate his dangerous propensities, Murdoch is not entitled to be released from custody.

The risk assessment panel opined that, if Murdoch were released under conditions that he participate in an outpatient psychiatric treatment program and that he not have access to weapons, his dangerous propensities could be successfully managed. If, however, there were no assurances that Murdoch would comply with these conditions, the panel opined he would pose a risk of danger to others.

While this appeal was pending, the warden of the Medical Center for Federal Prisoners

at Springfield, Missouri, submitted to the district court, and that court referred to us, a third report from the risk assessment panel dated August 21, 1996. In this report, the panel opines that Murdoch's condition has improved, that the financial stress he previously encountered has been ameliorated by his mother paying off his "remaining debt" and being willing to have Murdoch live with her, and that Murdoch's former employer is willing to reemploy him. The panel also opined that Murdoch's mother is supportive and willing to assist in Murdoch's regular contact with the Mental Health Treatment Center in Scotland, and that the panel believes Murdoch would "cooperate with outpatient treatment regardless of whether it is mandated."

The district court has not had the benefit of considering this latest report from the risk assessment panel. Nor has it had the opportunity to consider whether there are conditions of release which could be imposed and which would provide assurance that, if released, Murdoch would not pose a risk of danger to others.

We restrict our review to the record which was before the district court. Based on that record, we conclude the district court did not clearly err by finding that Murdoch suffers from a mental disease or defect which presents a substantial risk of danger to others.[1] Because Murdoch did not satisfy his burden under section 4243, he is not entitled to be released from confinement at this time. We do not reach the question whether release would be appropriate, in light of the latest report from the risk assessment panel, if conditions of release could be imposed which would provide assurance that, if released, Murdoch would not pose a risk of danger to others. That is something the district court should determine.

AFFIRMED.

WILSON, District Judge, concurring:

I agree with the majority in its conclusion that the fact that an insanity acquittee is largely asymptomatic does not mandate release under § 4243. Whether or not symptoms of the disease are manifested does not change the fact that the acquittee "suffers" from a mental disease or defect. I write separately, however, because I do not believe the appellant conceded that his condition could legally be considered a "mental disease or defect."[1] I conclude that his condition—personality disorder not otherwise specified (NOS) with passive/aggressive and narcissistic tendencies—is a mental disease or defect within the meaning of § 4243. Thus, I concur in the judgment as well.

As stated above, whether a person is suffering from a mental disease or defect is generally a question of fact. Deference is properly afforded to a district court's weighing of the evidence and determinations of credibility. However, deference cannot be afforded, where—viewing the evidence in the light most favorable to the court's conclusion—the facts do not fall within the applicable legal standard. Generally, it will be readily apparent whether a mental condition is or is not a mental disease or defect (e.g. schizophrenia is, a head cold is not), the legal question is thus glossed over, and the only question which remains is a factual one—whether it was proper for a fact-finder to conclude that the defendant did or did not suffer from such a condition.

In this case, however, the appellant has specifically raised the legal question. Thus, although we must defer in this case to the

---

1. The risk assessment panel members' failure to conclusively state that Murdoch's personality disorder constitutes a mental disease does not affect our conclusion. Both risk assessment reports left to the district court the determination whether a personality disorder could legally be a mental disease. The panel members had the responsibility to present their observations to the court. It was then the court's responsibility to determine whether Murdoch's personality disorder fell within the meaning of section 4243.

1. As stated in the majority opinion, Appellant conceded that a personality disorder could—under certain circumstances—be a mental disease or defect. I do not understand that concession to have eliminated one of the principal arguments set out in the briefs, namely, whether Appellant's personality disorder is a mental disease or defect.

district court's conclusion that Appellant suffers from a continuing personality disorder—a descriptive question—the court must still review *de novo* whether that condition falls within § 4243—the normative question. *See United States v. Lyons,* 731 F.2d 243 (5th Cir.), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984) (issue of insanity cannot go to jury where evidence is only that defendant suffers from a narcotics addiction which does not, standing alone, fall within scope of mental disease or defect).

There is little guidance as to when a psychiatric condition falls within the scope of § 4243's mental disease or defect. The courts have expressed reluctance in relying on medical categories and labels in determining the limits of legal insanity. *United States v. Lyons,* 731 F.2d 243 (5th Cir.), *cert. denied,* 469 U.S. 930, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984); *U.S. v. Torniero,* 570 F.Supp. 721 (D.Conn.1983), *aff'd,* 735 F.2d 725, *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). Such reluctance is warranted. "[W]hat definition of 'mental disease or defect' is to be employed by courts

enforcing the criminal law is, in the final analysis, a question of legal, moral and policy—not of medical—judgment. Among the most basic purposes of the criminal law is that of preventing a person from injuring others or, perhaps to a lesser degree, himself. This purpose and others appropriate to law enforcement are not necessarily served by an uncritical application of definitions developed with medical considerations of diagnosis and treatment foremost in mind." *Lyons* at 246.[2] Thus, it is not enough that Appellant suffers from a condition to which a psychiatric label has been attached. Likewise, it is of no significance that one witness, Dr. Saint Martin, testified that a personality disorder is not considered a mental disease or defect in the psychiatric literature.[3]

Nor can it he assumed that, as a matter of policy, a personality disorder is a mental disease or defect. To date, there is no federal law on whether a personality disorder qualifies as a mental disease or defect under § 4243.[4] Among the states, there have been mixed results on the issue. At least two

---

2. Indeed, this case is unique in that the review panel specifically refused to say either way whether a personality disorder is a mental disease or defect. *Cf. U.S. v. Bilyk,* 949 F.2d 259 (8th Cir.1991) (experts distinguished personality disorder from mental illness); *United States v. Bilyk,* 29 F.3d 459 (8th Cir.1994) (review panel distinguishes personality disorder from mental illness).

3. Then District Judge Cabranes lays out a thorough and provocative discussion on the definition of mental illness and the pitfalls of merging the definitions of illness and criminal conduct in *U.S. v. Torniero,* 570 F.Supp. 721 (D.Conn.1983) (concluding that insanity is, for purposes of criminal law, a state of mind which is incomprehensible to the jury).

4. The two *Bilyk* cases cited by both parties are unhelpful. In the first case, a denial of release was upheld where two experts testified that the defendant only had a personality disorder but a third testified that he suffered from schizophrenia. *U.S. v. Bilyk,* 949 F.2d 259 (8th Cir.1991). Thus, the first *Bilyk* case merely upheld the trial court's weighing of competing expert opinions. The second case, *U.S. v. Bilyk,* 29 F.3d 459 (8th Cir.1994) did cite a review panel's report distinguishing personality disorders from mental diseases, but decided nothing more than that the case had to be remanded to allow the court to examine the review panel's report. Cases touch-

ing on the issue in the context of an insanity plea under 18 U.S.C. § 17 imply a split. Some have implied that personality disorders are mental diseases, though not severe enough to serve as the basis for an insanity plea. *See U.S. v. Salava,* 978 F.2d 320 (non-psychotic behaviors or neuroses such as "inadequate personality" are not severe mental diseases or defects); *U.S. v. Shlater,* 85 F.3d 1251 (7th Cir.1996) (rejecting insanity plea based on mild to moderate personality disorder because not *severe* personality disorder). In contrast, in *U.S. v. Rosenheimer,* 807 F.2d 107 (7th Cir.1986), the court upheld, with no explanation, the trial court's distinction between personality disorders and mental diseases or defects for purposes of an insanity plea. *See also U.S. v. Prescott,* 920 F.2d 139 (2d Cir.1990) (upholding finding of no mental disease or defect where experts testified that personality disorder was not considered a mental disease or defect in the mental health community). In *dicta,* the Supreme Court has implied that a personality disorder standing alone would not be sufficient to warrant continued commitment of an insanity acquittee. *Foucha v. Louisiana,* 504 U.S. 71, 83, 112 S.Ct. 1780, 1787, 118 L.Ed.2d 437 (1992) (state cannot hold indefinitely an insanity acquittee not mentally ill who could be shown to have a personality disorder that may lead to criminal conduct). The *dicta* in *Foucha,* while striking, is of no precedential value since the state had conceded in that case that the acquittee's anti-social personality disorder was not a mental disease.

states have categorically excluded personality disorders from the definition of mental disease or defect. Cal.Penal Code § 25.5; Or.Rev.Stat. § 161.295. Others exclude certain types of personality defects, disorders, or abnormalities, most commonly those of the antisocial subcategory. Ala.Code § 13A–3–1; Ariz.Rev.Stat.Ann. § 13–502; Ill.St. Ch. 720 § 5/6–2; Ind.St. 35–41–3–6; Me.Rev.Stat. Am.Tit., 17–A, § 39; Tenn.Code Ann. § 39–11–501; Utah Code Ann. § 76–2–305. At the opposite end of the spectrum, Alaska has adopted an extraordinarily broad definition of mental disease or defect which would seem to encompass all personality disorders. Alaska Stat. § 12.47.130(3) (mental disease or defect means a disorder of thought or mood that substantially impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life). In those states which have chosen to exclude personality disorders from serving as the basis for a verdict of not guilty by reason of insanity, there seems to be a desire to guard against turning every personality quirk into a "mental disease or defect" through the imprimatur of a psychiatric category. Criminal Procedure: Insanity Plea—Inadmissible Mental Conditions, 26 Pacific L.J. 254, 255 (1995).

Although I agree that mere personality quirks or characteristics cannot be construed as mental diseases or defects for purposes of determining legal sanity, I conclude that a personality disorder such as that suffered by Appellant is much more than a mere quirk. It is a systemic, enduring, and severe condition resulting in an extremely abnormal perception of and reaction to everyday events. In short, Appellant's condition is so encompassing and impairing that it rises to the level of a disease or defect.

My conclusion is based, in large part, on interpreting what a diagnosis of personality disorder NOS signifies about a person's mental state. That is, what does the psychiatric shorthand mean? To answer this question, I take judicial notice of the diagnostic standards in the American Psychiatric Association's Diagnostic and Statistical Manual, (4th Ed.1994) ("DSM IV"). *See U.S. v. Cantu,* 12 F.3d 1506, 1509, n. 1 (9th Cir.1993) (taking judicial notice that a condition listed in the DSM is a recognized psychiatric condition); *U.S. v. Johnson,* 979 F.2d 396, 401 (6th Cir. 1992) (taking judicial notice of an earlier edition of the DSM).[5]

The DSM IV defines a personality disorder as "an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture [which] is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment." DSM IV at 629. A personality disorder manifests itself in at least two of the following areas: 1. cognition, 2. affectivity, 3. interpersonal functioning, or 4. impulse control. *Id.* In addition, like all mental disorders classified in the DSM IV, a personality disorder must be a "clinically significant behavioral or psychological syndrome or pattern." *Id.* at xxi. Finally, a personality disorder differs from mere personality traits. "Only when personality traits are inflexible and maladaptive and cause significant functional impairment or subjective distress do they constitute a personality disorder." *Id.* at 630.

Of particular significance is the fact that a personality disorder is more than just a repeated pattern of behavior. It is an enduring pattern of behavior *and* inner experience which can affect cognition (i.e. ways of perceiving and understandings) and affectivity (emotional reactions). Therefore, it can be said to be "mental." In addition, it does not just manifest itself now and again in response to a particular set of circumstances; it is pervasive and inflexible. It is not just one part of a person's personality which is annoying, distasteful, or rude; it is a trait or group of traits which dominates the person's mental state to the point where they experience *significant* functional impairment or

---

5. My reliance on the DSM IV is not in contradiction with the position taken earlier that the definition of mental disease or defect is a matter of legal and not medical judgment. The law must ultimately be applied to the facts, but the facts can only be determined by trying to understand what the evaluating doctors saw when they examined Appellant. Those observations were recorded in the diagnosis which can only be understood through reference to the DSM IV.

**480**

subjective distress. Thus, it comports with the general connotation of a "disease or defect" in that it is neither a temporary condition nor a chosen way of responding but rather a systemic, impairing psychiatric abnormality. Moreover, unlike narcotics addiction, antisocial, or compulsive gambling disorders, there is no fundamental criminal policy at odds with including a personality disorder NOS with passive-aggressive, narcissistic tendencies within the scope of § 4243. Therefore, the District Court correctly construed Appellant's condition to be a mental disease or defect within the meaning of § 4243.