**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                    No. 98-4265

WENDY ROBBINS PERRY,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CR-97-266-MU)

Argued: October 29, 1998

Decided: February 17, 1999

Before WIDENER and MURNAGHAN, Circuit Judges, and
WILSON, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Chief Judge Wilson
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Brian Lee Whisler, Assistant United States Attorney,
Charlotte, North Carolina, for Appellant. Richard Andrew Culler,
CULLER & CULLER, P.A., Charlotte, North Carolina, for Appellee.
**ON BRIEF:** Mark T. Calloway, United States Attorney, Charlotte,
North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In September 1997, Wendy Robbins Perry pleaded guilty to a one-count information charging her with embezzlement pursuant to 18 U.S.C. § 656. A probation officer prepared a pre-sentence report to which Mrs. Perry objected, in writing, claiming that she suffered from mental and emotional difficulties which made her eligible for a downward departure due to diminished capacity under § 5K2.13 of the United States Sentencing Guidelines.

Following the testimony of her psychologist and a letter report from her gynecologist, the district court granted Mrs. Perry's request for downward departure. The government appeals that decision and argues that the evidence was insufficient to establish that Mrs. Perry suffered from the requisite diminished capacity. Especially in light of the government's failure to present any evidence to refute the testimony of Mrs. Perry's experts, we disagree. Accordingly, we affirm the district court's decision to downwardly depart.

I

In 1988, Branch Banking & Trust hired Mrs. Perry as a teller. It was not long thereafter that Mrs. Perry began taking money from her cash drawer, concealing her theft by altering the daily balance reports. Sometime later, she devised a scheme whereby she falsified Inter-branch Tickets, a method used to transfer funds between the bank's branches, to conceal the missing funds. By falsely applying the tickets on a weekly basis, Mrs. Perry maintained her scheme, undetected, through a series of promotions, not to mention regular audits, which spanned almost nine years. In total, Mrs. Perry attempted to embezzle $584,602.53, between $1,000 and $1,500 a week.[1] Eventually, Mrs.

_____

[1] Following some adjustments, the net loss to the bank as a result of Mrs. Perry's crimes was $556,197.15.

2

Perry's thefts were discovered, at which time she cooperated fully with authorities.

At sentencing, Mrs. Perry called Dr. John Long, a psychologist with Piedmont Psychological Associates, as an expert witness to testify on behalf of her motion for downward departure under § 5K2.13. Dr. Long testified that Mrs. Perry was clinically depressed; that her actions evidenced a need for acceptance, an addictive quality, and a capacity for denial; and that the denial and addictive aspects of her problem "did cause some diminished judgment."

Mrs. Perry also provided the court, through her response to the probation officer's pre-sentence report, with the report of Dr. Charles Peach, Mrs. Perry's gynecologist. In that report, Dr. Peach acknowledged that Mrs. Perry reported signs of depression and anxiety at least as early as 1992, and perhaps back into the late 1980's. He prescribed Xanax, an anti-anxiety medication, at that time. After attempting a different treatment under one of Dr. Peach's associates for a few years, Mrs. Perry returned to Dr. Peach in 1996, and he began treating her with anti-depressant medication.

The government declined to offer any evidence to refute Mrs. Perry's expert testimony. Instead, the prosecutor merely offered his opinion regarding the insufficiency of the evidence. The district court granted Mrs. Perry a downward departure from an offense level of 15 to an offense level of 13.

II

"A district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." Koon v. United States, 518 U.S. 81, 98 (1996). Thus, the appropriate standard to apply to the district court's downward departure is abuse of discretion. Koon, 518 U.S. at 99-100. We find that the district court did not abuse its discretion in this instance.

U.S.S.G. § 5K2.13 states:

> If a defendant committed a non-violent offense while suffering from a significantly reduced mental capacity not resulting from the voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate the need for incarceration to protect the public.

This type of diminished capacity is one ground designated by the Guidelines as "not adequately taken into consideration by the Sentencing Commission," and is therefore an appropriate reason for a downward departure pursuant to 18 U.S.C. § 3553(b). U.S.S.G. § 5K2.0 (1997) (quoting 18 U.S.C. § 3553(b)); § 5K2.13 (1997) (policy statement); United States v. Goossens, 84 F.3d 697, 700 (4th Cir. 1996); United States v. Glick, 946 F.2d 335, 338 (4th Cir. 1991). Thus, we look to the district court's findings of fact to determine whether it abused its discretion in departing downward based on diminished capacity. Goossens, 84 F.3d at 700; Glick, 946 F.2d at 338.

The district court found "that Ms. Perry's lifetime of rejection, abuse coupled with clear, improper, inadequate medication is supportive of Dr. Long's ultimate conclusion that in her case, she was heavily into denial, and that the denial clouded her judgement such that she -- her problems impaired the formation of reasoned judgments as required by U.S. v. Goossens." The government argues that the court erred in determining that Mrs. Perry's denial rose to the level of diminished capacity and, further, in determining that a sufficient causal connection existed between Mrs. Perry's crimes and her "purported diminished capacity." Given the evidence presented to the district court, that argument is not well taken.

"[I]n order for a defendant's mental condition to be considered `a significantly reduced mental capacity' within the meaning of § 5K2.13, p.s., the defendant must have been unable to process information or to reason." Goossens, 84 F.3d at 701. The evidence in Goossens contained no conclusion that reason had been impaired. 84 F.3d at 701. In light of that evidentiary deficiency, the court looked to the defendant's "high level of mental functioning" to find insuffi-

4

cient impairment.[2] <u>Goossens</u> , 84 F.3d at 701-02. The government now asserts that the complexity of Mrs. Perry's crimes means that she must have been capable of reason.

At Mrs. Perry's sentencing, however, Dr. Long testified that "the denial process that operates in any kind of addictive behavior did cause some diminished judgment in this situation." When further asked whether "this addiction impaired the formation of reasoned judgments in Mrs. Perry?", Dr. Long replied "Yes, in the sense that the denial was operational." In response, the government put on no evidence to refute this expert testimony. Presented with no contrary testimony, the district court followed Dr. Long's conclusion, and, based upon the evidence before it, we cannot say that the court's decision was clearly erroneous. See <u>Glick</u>, 946 F.2d at 339 (making a similar determination); cf. <u>Glick</u>, 946 F.2d at 339 ("The government presented no evidence on the issue of Glick's mental capacity except a page from a textbook. While the government contends that the psychiatrist's testimony was not credible, the district court found to the contrary and we are not in a position to say otherwise.").

The government encounters the same problem here as in <u>Glick</u> with its argument regarding the sufficiency of the causal connection between the diminished capacity found by the district court and Mrs. Perry's crimes. Dr. Long testified that determining the cause of her criminal behavior was one of Mrs. Perry's primary reasons for seeking therapy. In that regard, he said "buying things was a way of gaining acceptance from other people . . . spending money had an addictive quality to it in a sense that when she was spending money, she felt important, she felt some elation, and I think this contrasted to much of her day-to-day existence being, I would say, quietly depressed and anxious." On cross examination, Dr. Long did admit that it was possible that Mrs. Perry simply liked to spend money. The

_____

[2] Similarly, in <u>United States v. Withers</u>, on which the government also relies, this court reversed a § 5K2.13 downward departure only after finding that "there was no evidence that Withers' depression affected her ability to reason or process information." 100 F.3d 1142, 1148 (4th Cir. 1996). This key evidence which was not present in the cases cited by the government was not only provided by Mrs. Perry but not contradicted by any government evidence.

5

district court, however, credited Dr. Long's other testimony along with other evidence tending to establish a causal connection[3] and, based on the record, did not abuse its discretion by so deciding. Contrary to the government's assertion, this determination is not precluded by our decision in Goossens. In that case, the court found that "no evidence" supported a causal connection. Goossens, 84 F.3d at 702. That is simply not the case we have before us; here we have the uncontradicted evidence of a physician or a psychologist.[4]

III.

Accordingly, the sentence of the district court is

AFFIRMED.[5]

_____

[3] In his report, Dr. Peach supported this conclusion when he said the following:

> "It is my belief that the combination of these traumatic events with her family history of depression has a lot to do with the patient's current mood disorder and may also have impaired her judgment at the times in question. . . ."

[4] Although the government did not specifically contest the extent of the departure, the reasonableness of the extent of a downward departure is generally our final inquiry into these matters. See Goossens, 84 F.3d at 700; Glick, 946 F.2d at 339. The government did protest, in the final footnote to its brief, that Mrs. Perry's resulting sentence would make her eligible for a program which "would unjustly result in the defendant serving six months of active imprisonment. . . ." Mrs. Perry's original guidelines were 18 to 24 months for a level 15. The district court departed two levels to a level 13 which carried a range of 12 to 18 months. Mrs. Perry was sentenced to 12 months and one day, a less than six month difference. We cannot say that a six month departure amounted to an abuse of discretion under these circumstances.

[5] While the dissenting opinion recites that "Wordsmithing is no substitute for difficult, informed, practical decision making," (p.7, lines 4,5 of dissent) it proceeds to do just that; it does not take account of the explicit finding of the district judge, which is quoted below; and it ignores the persuasive effect of Fed. R. Civ. P. 52(a) which states, " . . . due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

WILSON, Chief District Judge, dissenting:

I regret that I must dissent. There is much to be said for affording great deference to the sentencing decision of the trial judge. Nuances wholly undetectable from the cold, printed record often are clear to the trial judge who has seen and heard the witnesses. Wordsmithing is no substitute for difficult, informed, practical decision making. Four words, however, demonstrate why I cannot join the majority opinion: "not very much reduction." The trial judge stated that Perry suffered from "reduced mental capacity, not very much reduction, but certainly the formation of reasoned judgment was impaired...." (emphasis added). The trial judge's finding of "not very much reduction" is borne out by the evidence. I do not dissent because the trial judge chose his words poorly, therefore, but because he chose them well, and the findings they reveal do not support his guideline application.

A defendant's "[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range...." U.S. Sentencing Guidelines Manual § 5H1.3 (1998). The Sentencing Guidelines, however, provide a narrow exception from this general rule when the defendant's mental capacity is impaired. See id. § 5K2.13. A District Court may lower a sentence because of reduced mental capacity, but only if the defendant suffered "from a significantly reduced mental capacity...." Id. (emphasis added). In United States v. Withers , 100 F.3d 1142 (4th Cir. 1996), this court clarified that a defendant suffering from diminished capacity must "be suffering from something greater than `emotional problems....'" Id. at 1148 (quoting United States v. Gentry, 925

_____

> THE COURT: Next go around, if you want me to consider more punishment in a circumstance where there is evidence, where I have got a professional whose opinion I respect making a statement that is clearly within the law, and you--you don't agree with it, I don't expect you to agree with it, but I do expect, if the Government sufficiently disagrees, to demand more time to generate more evidence, Okay?

(Italics added).

7

F.2d 186, 188 (7th Cir. 1991)). The defendant must show "an inability `to process information or to reason.'" Id . (quoting United States v. Goossens, 84 F.3d 697, 701 (4th Cir. 1996)). That is, the defendant's problems must "`impair the formation of reasoned judgments' or prevent him from processing information when he committed the offenses." See Goossens, 84 F.3d at 701 (quoting United States v. Cantu, 12 F.3d 1506, 1513 (9th Cir. 1993)).

The record is void of any indication that Perry suffered from the required level of reduced capacity. Perry carried out a complex financial fraud over several years. Her own psychologist described her as "bright." Assuming that her psychologist correctly diagnosed her as suffering from "addictive tendencies," those tendencies did not significantly impair her judgment. The most that the psychologist claimed was that her mental problems "cloud[ed] her judgment" and that her problems "did cause some diminished capacity." (emphasis added). He even conceded that Perry may have embezzled over half a million dollars because of a motivation common to many embezzlers: she liked to spend money. Based on this testimony, the trial judge correctly found as a matter of fact that there was"not very much reduction" in her mental capacity. The trial judge erred, however, in concluding that his finding that a defendant suffered from "not very much reduction" could somehow satisfy the requirement for a "significantly reduced mental capacity."*

Not only did the trial judge's decision not comport with the plain language of the Sentencing Guidelines, but it is also inconsistent with the precedent of this circuit. Perry is much like the defendant in United States v. Goossens, 84 F.3d at 697. Goossens was convicted of using a computer to download child pornography. See id. at 698-99. When accessing pornography, Goossens had the wherewithal to use encryption technology to hide his crime. See id. As the majority

_____

*The majority opinion places great weight on the government's decision not to proffer evidence contradicting Perry's expert. Yet, such additional evidence was unnecessary. Perry's own expert testified that she did not suffer from a significantly reduced mental capacity; a conclusion the trial judge accepted. I cannot fault the government for failing to contradict the testimony of a witness when that the defendant has failed to satisfy its burden of production.

8

notes, this court rejected Goossens's claim of reduced mental capacity. See id. at 702. This court in Goossens held that to merit a reduced sentence the defendant "must have been unable to process information or to reason" Id. at 701. This court went on to hold that such a finding was unwarranted when the defendant "`displayed considerable mental agility in his professional and personal affairs, both legal and illicit.'" Id. (quoting United States v. Johnson, 979 F.2d 396, 401 (6th Cir. 1991)). The very nature of Perry's financial fraud and the schemes she used to conceal her crimes demonstrate that she had "`considerable mental agility,'" defeating any claim of reduced mental capacity. Id. (quoting Johnson, 979 F.2d at 401).

The majority attempts to distinguish Goossens by noting that there was "no evidence" of a causal relationship between Goossens's diminished mental capacity and his crimes. See Maj. Op. at 4-5 (quoting Goossens, 84 F.3d at 702). That finding, however, was dicta. See id. ("Moreover, even if Goossens suffered from diminished mental capacity, no evidence supports a conclusion that it contributed in any degree to the commission of the offense."). The court in Goossens found that the defendant did not warrant a downward adjustment because his ability to process information and to reason was not substantially impaired. See id. at 701. Similarly, Perry, by the trial judge's own admission, did not suffer from a significantly reduced mental capacity.

This case comes down to three simple facts. First, the trial judge found that Perry did not suffer from a significantly reduced mental capacity. Second, the testimony of Perry's own psychologist supports the trial judge's finding. Third, Perry's crimes involved a sustained pattern of forgery, deception, and manipulation of complicated financial transactions, all of which required "`considerable mental agility.'" Id. (quoting Johnson, 979 F.2d at 401). These three facts, the plain language of the Sentencing Guidelines, and the binding precedent of this court force me to conclude that the trial judge erred when he reduced Perry's sentence.

9