**UNITED STATES of America, Appellee,**

v.

**Steven EVANOFF, Appellant.**

No. 92–3435.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1993.

Decided Nov. 30, 1993.

S. Dean Price, Asst. Federal Public Defender (argued), Springfield, MO (Raymond Conrad, Federal Public Defender, on the brief), for appellant.

Alleen S. Castellani, Asst. U.S. Atty. (argued), Kansas City, MO (Jean Paul Bradshaw, II and Williams G. Crowe, on the brief), for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Steven Louie Evanoff appeals an order of the district court committing him to the custody of the Attorney General when his prison term ended because he was found to suffer from a mental disease or defect as a result of which he posed a substantial risk of either bodily injury to another person or serious damage to property of another. *See* 18 U.S.C. § 4246. In 1989, Evanoff pleaded guilty to possession with intent to distribute cocaine and to transferring a firearm with the knowledge it would be used for an act of violence. Shortly before Evanoff finished serving his 33–month sentence, a pre-release review panel concluded that he suffered from a mental disease or defect that would cause him to be dangerous if he were released. On the basis of the panel's finding, the government filed a petition under section 4246 to indefinitely commit Evanoff. After hearing opposing experts' opinions on Evanoff's dangerousness, the magistrate judge recommended his commitment. Over Evanoff's exceptions to the magistrate judge's recommendation, the district court ordered that Evanoff be committed. Evanoff appeals the district court's order, and we affirm.

Evanoff argues that the government failed to meet its burden of establishing dangerousness[1] by clear and convincing evidence, and that even if the government did establish his dangerousness, it did not establish that his dangerousness resulted from his mental illness. He also argues that his commitment violates both his plea agreement and his right to due process.

We review the district court's finding that Evanoff's release would create a substantial risk of injury to another person or serious damage to property for clear error. *See United States v. Steil,* 916 F.2d 485, 488 (8th Cir.1990). Because there must be clear and convincing evidence of the substantial risk, however, our standard of review necessarily is more exacting than if the statute allowed for substantial risk to be established by a preponderance of the evidence.

Our review of the hearing testimony and of the written record,[2] consisting mainly of second-hand summaries of Evanoff's mental health history, leads us to conclude that the district court did not abuse its discretion in finding clear and convincing evidence of Evanoff's dangerousness. The record indicates Evanoff has suffered from mental health problems at least since 1984 when he was in the United States Air Force. In 1986, Evanoff's family unsuccessfully attempted to have him committed to a mental health insti-

---

[1]. The government and Evanoff, represented by counsel, stipulated that Evanoff suffered from a mental illness, and thus the only issue before the magistrate judge and the district court was whether Evanoff was dangerous as a result of that mental illness.

[2]. We are concerned that the written record does not contain all of the evaluations that have been made of Evanoff since 1984. Both parties appear to be satisfied by the record before us, however, and we shall therefore accept the record as it is.

tution. After Evanoff was arrested in 1989, he was referred to the United States Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri, for a determination of his mental competency to stand trial. MCFP staff doctors examined Evanoff and concluded he was mentally competent to stand trial, although Evanoff at that time said he felt guided by inspirations from an unknown source and believed he could control the present and the future by command.

Evanoff began serving his sentence in July 1990 at a federal correctional institution in Fort Worth, Texas, where a probation officer advised Evanoff's case manager that Evanoff suffered from psychological problems, had a violent history, had confessed to several murders, was a murder suspect, and, when Evanoff formerly was in the military, had shown an unusual attraction to weapons and violence and experienced psychological problems. Evanoff denied that he had any current intentions to harm himself or others, but indicated that he experienced "spells," and suggested that he would harm someone if he experienced another spell.

On September 17, 1990, Evanoff was admitted to the Federal Medical Center (FMC) in Rochester, Minnesota, because prison officials at Fort Worth believed he posed a threat to others because of his psychiatric illness. Evanoff remained at FMC under various medication for approximately eight months, during which he twice requested that he be secluded.

Evanoff later was transferred to the federal correctional institution in Seagoville, Texas, where he remained through December 1991. Sometime during the 1991 holiday season, Evanoff's behavior deteriorated, and he was treated with Haldol and Cogentin. During this period Evanoff again requested that he be secluded from the open prison population. On December 31, 1991, Evanoff was transferred to MCFP because he was diagnosed with atypical psychosis, with symptoms of religious delusions, expansive and grandiose thinking, and auditory command hallucinations. Seagoville officials believed Evanoff was a danger to others. At MCFP, clinical psychologist Daniel V. Taub personally interviewed Evanoff, and then the psychiatric pre-release review panel[3] concluded that Evanoff suffered from schizophrenia, and as a result of that mental illness, his release would create a substantial risk of bodily injury to another person or serious damage to property.

Dr. David L. Reuterfors, chairperson of Evanoff's pre-release review panel, testified before the magistrate judge to additional evidence that led him and the panel to conclude that Evanoff was dangerous. Reuterfors testified to the content of an FBI memorandum prepared in 1989, summarizing a taped conversation in which Evanoff told an informant that he had killed two or more people, that a girl in Oklahoma needed to be killed and hurt, that he didn't care who he killed, and that he was willing to be hired to kill someone.[4] Reuterfors also described records of vague, angry, and threatening statements Evanoff made while at FMC and of Evanoff's request to be secluded there on one occasion to prevent him from "getting another charge." Reuterfors read excerpts of Dr.

3. The panel consisted of David L. Reuterfors, chief of psychology at MCFP; staff psychiatrist Dr. Kenneth Fattman; and staff psychiatrist and neurologist Dr. Ewardo Ulloa. Additional non-voting staff, including Dr. Taub, also were present. The panel consulted by telephone with Dr. Ingram, Evanoff's treating psychologist at Seagoville.

4. Another memorandum discussed by Reuterfors summarized an informant's account of a conversation in which Evanoff allegedly admitted to committing a murder in 1986 and accurately described details of the murder that were not released to the public. Although Evanoff was a suspect in that murder investigation, he never was charged. We realize that experts may rely on a variety of otherwise inadmissible materials in forming their opinions, see Fed.R.Evid. 703, and that Evanoff's attorney did not object to the admission of this memoranda as a basis for the panel's opinion. We nonetheless find it unnecessary to place any weight on this informant's account in affirming the district court's finding of dangerousness, and we question whether psychologists reasonably rely on such material. In another context, the Supreme Court has reminded us that the rules "assign to the trial judge the task of ensuring that an expert's testimony ... rests on a reliable foundation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993).

Taub's notes from his January 1992 interview with Evanoff at MCFP.[5] Reuterfors stated that Evanoff told Taub he would rather take cocaine than the Haldol prescribed to relax him. Evanoff also told Taub that he voluntarily had requested lock-up for the Christmas season because he does not like Christmas, gets angry around Christmas, and did not want to be violent. Evanoff further told Taub that he periodically needs to get away to re-establish control of his tendency to hurt people and that he periodically becomes so edgy that he tears things up to avoid trouble. Evanoff also informed Taub he knew thousands of ways of hurting and killing people. Reuterfors testified that there was no record Evanoff engaged in any actual violence during his incarceration. On cross-examination, Reuterfors testified that Evanoff stated he could abstain from following the directions of the spirits that guided him.[6]

Dr. Kenneth J. Burstin, a clinical psychologist appointed by the magistrate judge to conduct an independent evaluation of Evanoff, testified in favor of Evanoff's release. Burstin testified he did not "think that it's been established that Mr. Evanoff has been dangerous for any length of time, and, therefore that [Evanoff's] mental disease or defect is not correlated with ongoing dangerousness." Tr. at 22. Burstin stated that the best predictor of dangerousness is an ongoing history of dangerousness, and such a history may be indicated by assaults, violence, and necessity of secluding a person because of violence or threats of violence.

The review panel's and Burstin's written reports contained additional information not discussed at the hearing but which support a finding of dangerousness. The review panel report included a summary of the panel's interview with Evanoff, during which Evanoff stated he was uneasy in crowds, particularly sensitive to the Christmas season, and, in response to commanding voices, he harmed people in small ways without physical violence. Dr. Ingram told the panel that he did not regard Evanoff as malingering, that unpredictability had destabilized Evanoff and resulted in decompensation of Evanoff's defenses, and that Evanoff's anxiety about going home might have affected his behavior. Burstin's written report stated Evanoff told Burstin that Christmas was a bad time for him, he was uneasy around others, and he heard voices that guided him. Evanoff denied to Burstin that the spirits who spoke to him committed violence. Evanoff also stated that, although the voices could suggest violence to him, he was not compelled to follow their instructions. Evanoff informed Burstin that he would take cocaine instead of any psychotropic medications prescribed to him. Evanoff also told Burstin that he had requested seclusion at Seagoville, as he twice had done at FMC, to be alone and think. Evanoff said he asked to be secluded on the ground that he was dangerous because staff had advised him that they could seclude him only if he was threatened or dangerous.

We reject Evanoff's argument that the government failed to meet its burden of establishing Evanoff's dangerousness. The evidence indicated that Evanoff, throughout his incarceration, suffered from auditory hallucinations which commanded him to harm people. Because of those hallucinations, Evanoff requested seclusion on at least three occasions in 1990 and 1991 to regain control of himself and to avoid harming others. Evanoff also consistently told psychologists that he would refuse any prescribed psychotropic drugs and would take cocaine instead of prescribed drugs. According to Reuterfors, Evanoff admitted on tape to an FBI informant that he had killed two or more people and that he was willing to be hired to kill

---

5. Although Taub's actual notes, along with other portions of Evanoff's central file, are not part of the record now before us, we have no reason to doubt the accuracy of Reuterfors's recitation. The notes serve simply as a basis for the panel opinion, and we consider them as such.

6. Leslie Heilman, Evanoff's case manager at MCFP and a non-voting member of Evanoff's pre-release review panel, also testified for the government. She testified that Evanoff had allegedly placed a threatening telephone call to his ex-wife, but we find this fifth-hand hearsay too untrustworthy to have served as any appreciable basis for a finding of dangerousness. We do, however, acknowledge Heilman's testimony that state placement for Evanoff was unavailable and that she was continuing her attempts to arrange such placement.

someone.[7] Reuterfors's opinion and the pre-release panel's opinion, both of which find ample support in the record, lead us to conclude that the government met its burden.

Evanoff contends that the evidence of his behavior was too remote to show present dangerousness, and that the government failed to connect his dangerousness to his mental illness, but we disagree. The expert opinions that Evanoff posed a substantial risk if released, were based in part on reports of Evanoff's behavior in late 1991, less than three months before Evanoff's commitment hearing. While other evidence on which the government's experts relied was less recent, the recency or remoteness of any particular activity simply affects the weight the court will give to that particular evidence. *See United States v. Sahhar,* 917 F.2d 1197, 1207 (9th Cir.1990) (remoteness of activity but one factor for court to consider in finding dangerousness under § 4246), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1591, 113 L.Ed.2d 655 (1991). Further, both parties testified that Evanoff hears voices which direct him to harm people, and records indicated that Evanoff has requested seclusion during his "spells" to avoid harming people. Reuterfors testified that Evanoff's behavior is consistent with and symptomatic of Evanoff's schizophrenic mental illness. We believe this is sufficient to support the district court's finding that Evanoff's dangerousness results from his mental illness.

■ Finally, Evanoff's argument that his commitment violates his right to due process and his plea agreement is without merit. Involuntary commitment under the terms of section 4246 does not violate due process. *See Jones v. United States,* 463 U.S. 354, 362, 103 S.Ct. 3043, 3048, 77 L.Ed.2d 694 (1983). We note that, although Evanoff's commitment is termed indefinite, the director of the facility in which Evanoff is hospitalized must submit an annual report to the district court concerning Evanoff's mental condition and his continued need for hospitalization. 18 U.S.C. § 4247(e). If the director determines either that Evanoff no longer suffers a men-

tal disease or defect or that he is no longer dangerous, then the court must either immediately order Evanoff's release or hold a hearing at which Evanoff may show by a preponderance of the evidence that he is entitled to release. *Id.* § 4246(e). Additionally, Evanoff's attorney or legal guardian may request such a hearing regardless of the director's determination. *Id.* § 4247(h).

Based on the foregoing, we affirm the order of the district court.

---

7. At no point in this proceeding has Evanoff disputed the accuracy of the FBI memorandum regarding his statements. He has simply argued

that it is either not relevant to this determination or too remote to be relied upon. We disagree.