**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  04a0004n.06**
**Filed:  October 1, 2004**

**CCase** ase No. 03-6015

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellee | ) | THE EASTERN DISTRICT OF |
| | ) | TENNESSEE |
| v. | ) | |
| | ) | |
| CHARLES MICHAEL BEATTY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

_____

Before: BATCHELDER and GIBBONS, Circuit Judges; STAFFORD, District Judge*

STAFFORD, District Judge.   Appellant, Charles Michael Beatty ("Beatty"), a

criminal defendant found not guilty by reason of insanity, appeals an order committing

him to the custody of the Attorney General pursuant to 18 U.S.C. § 4243(e).  We affirm.

I.

On February 5, 2002, Beatty stole a new Ford pick-up truck from a car

dealership in Harriman, Tennessee.  Later that same day, Beatty robbed the Branch

Banking and Trust Company in Knoxville, Tennessee.  Beatty approached a teller,

brandished a knife, and demanded two (2) one hundred dollar ($100.00) bills.  After the

teller complied with his demand, Beatty left the bank and drove the stolen truck to

_____

    * The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.
Florida.  He was later taken into custody.

    On March 19, 2002, Beatty was charged by indictment with one count of bank robbery and one count of transporting a stolen vehicle across state lines, all in violation of 18 U.S.C. §§ 2113 and 2312.  Beatty thereafter filed a notice of insanity defense and a motion to determine mental competency under 18 U.S.C. § 4241(a), (b)[1] and § 4242.[2] Advising the court that it had no objections to Beatty's motion, the government  itself moved for an evaluation of Beatty under 18 U.S.C. § 4242.  The district court granted the parties' motions to determine mental competency/insanity, sending Beatty to FCI Butner for examination under 18 U.S.C. §§ 4241 and 4242.

    Psychologists at FCI Butner diagnosed Beatty with "Psychotic Disorder Not Otherwise Specified," "Post-traumatic Stress Disorder," and "Bipolar I Disorder, Mixed, in Partial Remission."  J.A. at 116.  In their forensic report dated May 30, 2002, the psychologists stated that Beatty was "suffering from a severe mental disease or defect, which rendered him unable to appreciate the nature, quality, or wrongfulness of his

---

[1] Section 4241 authorizes the district court to order that a psychiatric or psychological examination of the defendant be conducted for the purposes of determining whether the defendant may be "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(a).

[2] Section 4242 requires the court to order a psychiatric or psychological examination, for the purpose of determining the defendant's sanity at the time of the alleged offense, if the defendant has provided notice of his intention to rely on the insanity defense and the government has moved for such an examination.

actions during the alleged offense." J.A. at 118. The psychologists also indicated in their report that Beatty's then current functioning was such that he could understand the nature and consequences of the proceedings against him and could aid in his defense.

At a competency hearing held on August 16, 2002, counsel for the government as well as Beatty stipulated that Beatty was currently competent, and a trial date was set. Beatty later filed an unopposed motion to waive jury trial, and a bench trial was begun. After Beatty entered an unopposed plea of not guilty only by reason of insanity, the court entered an order finding Beatty not guilty by reason of insanity. Beatty was remanded to the custody of the Attorney General pursuant to 18 U.S.C. § 4243.[3] He was sent to FMC Butner for a determination as to whether his "release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. § 4243(e). On January 7, 2003, the medical staff at FMC Butner issued a forensic report in which they noted the following:

> Identifying Mr. Beatty's true diagnoses has been difficult. Over the past seven years he has received numerous psychiatric diagnoses...including Obsessive-Compulsive Disorder; Impulse Control Disorder, Bipolar Disorder; Manic with Rapid Cycling; Dysthymia, Borderline Personality Traits with Narcissistic Features; Antisocial Personality Disorder; and Schizoaffective Disorder.

J.A. at 133. Based upon their own evaluation, FMC Butner doctors concluded that Beatty's diagnoses were as follows: (1) "Cocaine and Hallucinogen Induced Psychotic

---

[3] Section 4243(a) provides that "[i]f a person is found not guilty only by reason of insanity at the time of the offense charged, he shall be committed to a suitable facility until such time as he is eligible for release pursuant to subsection (e)."

Disorder, In Remission," (2) "Posttraumatic Stress Disorder," (3) "Polysubstance Dependence, In Remission, In a Controlled Environment," (4) "Obsessive-compulsive Disorder, In Remission," (5) "Antisocial Personality Disorder," and (6) "Borderline Personality Disorder." J.A. at 133. Unlike the doctors at FCI Butner, staff at FMC Butner concluded that "the results of Mr. Beatty's psychological testing are not consistent with someone suffering from a psychotic or Bipolar Disorder." J.A. at 134. They did acknowledge, however, that Beatty's "manipulative, aggressive behavior [was] consistent with Borderline Personality Disorder, which increases his risk for violent behavior." J.A. at 139. In conclusion, the FMC Butner evaluators opined as follows:

> [I]n his present state, Mr. Beatty's condition does not place him at substantial risk of danger to another person or the property of another person. His current mental state is stable. He exhibited no hallmark psychotic symptoms during this evaluation and has not shown acute signs of PTSD [posttraumatic stress disorder] or OCD [obsessive-compulsive disorder] that would place him at risk. While he poses a chronic risk of criminal activity in general due to his maladaptive personality traits and substance abuse, there is no strong link between a mental illness and dangerous behavior. In the absence of symptoms over the last several months and no known violence or serious property damage in the community, it would be difficult to justify an opinion that his conditions contribute to a substantial risk toward others.

J.A. at 139.

On February 4, 2003, the district court conducted a competency hearing pursuant to 18 U.S.C. § 4243 to determine Beatty's eligibility for release. Disturbed by the inconsistencies between the FCI Butner and the FMC Butner reports, the judge found that Beatty failed to show "by clear and convincing evidence that his unconditional release would not create a substantial risk of bodily injury to another

person or serious damage to property of another due to a present mental disease or defect." J.A. at 54. The district court also rejected FMC Butner's conclusion that release was appropriate, finding such a conclusion "not supported by the facts set forth in the evaluation." J.A. at 54. Concluding that further evaluation was necessary, the judge sent Beatty to FMC Rochester, Minnesota, where he remained until April 29, 2003.

On April 18, 2003, the medical staff at FMC Rochester issued a forensic report recommending Beatty's release under conditions, concluding that he may have a major mental illness (Bipolar I Disorder) but that he was not currently symptomatic. The doctors nonetheless opined that "due to his history of aggression, severe personality pathology, substance dependance, and possible Bipolar I Disorder, Mr. Beatty's unconditional release could present a substantial risk of bodily injury to another person, or serious damage to the property of another." J.A. at 157. The staff also stated:

> It is clear that this individual has a high propensity for aggressive and violent behavior. Despite his current asymptomatic presentation, the panel agrees that Mr. Beatty is at high risk for future violence. Collateral information, his presentation at FMC Rochester, as well as psychological testing suggest he may have a major mental illness (i.e., Bipolar I Disorder), but he is not currently symptomatic. However, as previously noted, Mr. Beatty has been on medication throughout most of his evaluation, so it is difficult to ascertain whether his asymptomatic presentation is due to treatment with medication or a lack of access to substances. We strongly feel the latter is more likely the case. The only way to clearly identify if there is a presence of mental illness is to closely monitor him for several months without medication and with no access to any illegal substances.

J.A. at 157.

On July 23, 2003, the district court conducted a second competency hearing

pursuant to 18 U.S.C. § 4243. At this second hearing, Beatty presented the staff

reports from both FMC Butner and FMC Rochester, noting all portions of those records

which indicated that Beatty no longer suffered from the symptoms of bipolar disease.

The single witness offered by either side was a guard at the local jail where Beatty was

held for several months prior to the hearing. This witness testified that Beatty had been

stable, had caused no problems for the authorities, and had not exhibited any violence

or unusual behaviors during that time, despite the fact that he ceased taking lithium in

April of 2003.

The district court again concluded that Beatty failed to carry his burden of

proving by clear and convincing evidence that his release would not create a substantial

risk of bodily injury to another person or serious damage to the property of another due

to his present mental disease or defect. The district judge explained that he relied on

the FMC Rochester report only, having found the reports from Butner internally

inconsistent. The district judge found it significant that the Rochester panel concluded

that Beatty "has a high propensity for aggressive and violent behavior" and that

"[d]espite his current asymptomatic presentation...Mr. Beatty is at high risk for future

violence." J.A. at 157. In his order again committing Beatty to the custody of the

Attorney General, the district judge wrote:

> At best, [Beatty] has been "somewhat monitored" and that
> intermittent monitoring indicates that he is presently
> asymptomatic. However, this court, under these
> circumstances, cannot merely focus on the fact that the
> defendant presently has no symptoms and concomitantly
> ignore the possibility or likelihood of an underlying
> disease....It is still unclear from this latest report whether Mr.
> Beatty's history of substance abuse contributes to a possible
> Bipolar I Disorder or whether the possible Bipolar I Disorder

> contributes to the defendant's use (and misuse) of illegal and legal drugs. Either way, violent criminal conduct ensues. The court will therefore order what the team of experts has recommended – that the defendant be "closely monitored" for several months without medication with no access to any illegal substances.

J.A. at 61.

Consistent with the district court's order entered July 31, 2003, Beatty was committed to the custody of the Attorney General for treatment/evaluation under 18 U.S.C. § 4243(e). On August 4, 2003, Beatty filed his notice of appeal of the court's order committing him to the custody of the Attorney General.[4]

II.

This court reviews for clear error the district court's finding of fact that Beatty's "release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18 U.S.C. § 4243(e). *See, e.g., United States v. Gilgert*, 314 F.3d 506, 512-513 (10th Cir. 2002). "[R]eview under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.' " *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Trust for Southern California*, 508 U.S. 602, 623 (1993). If the district court's finding is "plausible in light of the record viewed in its entirety," we may not reverse the district court's finding simply because we "would have weighed the evidence differently." *Anderson v. City of Bessemer City*, 470

---

[4] We learned at oral argument that Beatty has been released from custody since this appeal was filed. Because Beatty was released on conditions, the violation of which may cause him to be returned to custody, we do not find his appeal of the district court's order committing him to custody moot.

U.S. 564, 574 (1985).

### III.

An insanity acquittee, like Beatty, may be confined only as long as he is both mentally ill and dangerous; however, an insanity acquittee is not entitled to be released from custody until he can prove by clear and convincing evidence that he is no longer suffering from a mental disease or defect, or that, although he suffers from a mental disease or defect, he can be released under conditions that would eliminate his dangerous propensities. *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992); *United States v. Murdoch*, 98 F.3d 472, 476 (9th Cir. 1996), *cert. denied*, 521 U.S. 1122 (1997). If an insanity acquittee has dangerous propensities, but such propensities are not the result of a mental disease or defect, continued confinement is not justified under section 4243. *Foucha*, 71 U.S. at 77.

Beatty first argues that the district judge erred when he failed to release him after the first section 4243 hearing held on February 4, 2003. According to Beatty, the district court was required to release him based on the forensic report prepared by FMC Butner psychologists, a report that was purportedly "devoid of any findings that Mr. Beatty suffered from a mental disease or defect." Appellant's Br. at 8. Beatty suggests (1) that the district judge should not have considered the earlier FCI Butner report, which included a diagnosis of Bipolar I Disorder; (2) that he could not consider the personality disorders diagnosed by the doctors at FMC Butner to be the equivalent of mental diseases or defects; and (3) that, in effect, he was required to follow the FMC Butner psychologists' recommendation for conditional release. We reject all such suggestions.

Given the "awesome responsibility to the public to ensure that a clinical patient's release is safe," *United States v. Clark*, 893 F.2d 1277, 1282 (11th Cir.), *cert. denied*, 494 U.S. 1090 (1990), a trial judge is "entitled to consider the risk of dangerousness in light of [the patient's] entire behavioral and psychological profile, not just its most recent manifestation." *United States v. Williams*, 299 F.3d 673, 677 (8th Cir. 2002); *see also United States v. Evanoff,* 10 F.3d 559, 563 (8th Cir.1993) (stating that "the recency or remoteness of any particular activity simply affects the weight the court will give to that particular evidence"). The judge, moreover, need not blindly follow the recommendations of the medical experts but must assess the credibility of the medical evidence and must assign it only such weight as it deserves. *See, e.g.*, *United States v. Bilyk*, 949 F.2d 259, 261 (8th Cir.1991) (stating that "the district court may reject experts' conclusions when their reasoning supports different results").

In this case, on February 4, 2003, the district court had before him a man who, on October 24, 2002, pleaded not guilty only by reason of insanity. By so pleading, Beatty admitted that at the time of the offense, February 5, 2002, he was unable to appreciate the nature and quality or the wrongfulness of his acts "as a result of a *severe* mental disease or defect." 18 U.S.C. § 17(a) (emphasis added). Also before the district court on February 4, 2003, were the forensic reports from FCI Butner, dated May 30, 2002, and FMC Butner, dated January 7, 2003, both of which reports the trial court was permitted to consider. Doctors at FCI Butner diagnosed Beatty with Post-traumatic Stress Disorder, Psychotic Disorder Not otherwise Specified, and Bipolar I Disorder, Mixed, In Partial Remission. FCI Butner doctors concluded that Beatty's "history of PTSD, Bipolar I Disorder, and psychotic symptoms have [sic] been a longstanding

problem, irregardless of substance abuse." J.A. at 118. In contrast to FCI Butner doctors, FMC Butner doctors concluded that "Mr. Beatty's psychological testing [was] not consistent with someone suffering from a psychotic or Bipolar Disorder." J.A. at 134. The FMC doctors acknowledged, however, that "[identifying] Mr. Beatty's true diagnoses ha[d] been difficult," and they noted that Beatty had been diagnosed at various times with a number of different disorders, including Bipolar Disorder. Furthermore, while ruling out Bipolar I Disorder, the FMC doctors diagnosed Beatty with Posttraumatic Stress Disorder, Antisocial Personality Disorder, Borderline Personality Disorder, and a number of other disorders that, in the controlled environment of FMC Butner, the doctors found to be in remission. While FMC doctors opined that Beatty was then medically stable, they stated that Beatty "has demonstrated a pattern of manipulative, aggressive behavior consistent with Borderline Personality Disorder, which increases his risk for violent behavior." J.A. at 139. Given all of the evidence before the district court on February 4, 2003, we find no error in the trial court's determination that the evidence presented at that first hearing failed to prove clearly and convincingly that Beatty was entitled to release under section 4243.

Beatty next argues that, once the psychologists at FMC Rochester submitted their forensic report, the district court still had insufficient evidence to further confine Beatty. Beatty maintains that the Rochester doctors failed to find that he suffered from a mental disease or defect or that he posed anything more than a moderate risk of dangerousness. To be sure, the Rochester doctors reported their disagreement with the FCI Butner clinical formulation that resulted in Beatty's insanity plea. They concluded that Beatty's bank robbery was less likely the result of a genuine bipolar or

psychotic disorder and more likely the result of volitional drug use. While they could not rule out a bipolar or psychotic disorder, the Rochester staff concluded that the disorders most accurately capturing Beatty's presentation were "Antisocial Personality Disorder (severe, with psychopathic features)" and "Narcissistic Personality Disorder." J.A. at 154. Importantly, the Rochester doctors reported that "Mr. Beatty is at high risk for future violence." J.A. at 157. In concluding their report, the Rochester panel stated:

> The panel is clearly convinced that a combination of severe personality pathology and substance use contributes to Mr. Beatty's history of aggressive and maladaptive behavior. Bipolar I Disorder, which we consider a severe mental illness, could not be ruled out. Mr. Beatty has demonstrated sufficient psychiatric stability over the course of several months, but appears to require close monitoring to ensure continued cooperation with any treatment recommendations. In our opinion, due to his history of aggression, severe personality pathology, substance dependance, and possible Bipolar I Disorder, Mr. Beatty's unconditional release could present a substantial risk of bodily injury to another person, or serious damage to the property of another.

*Id.*

With the Rochester forensic report before it, the district court again found that Beatty failed to satisfy his burden of proving by clear and convincing evidence that he was entitled to be released. We find no clear error in the district court's finding. Certainly, the district court's finding was "plausible in light of the [entire] record." *Anderson*, 470 U.S. at 574. Lacking "a definite and firm conviction that a mistake has been committed," *id.,* we AFFIRM.