RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0101p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                              No. 09-5688

        *v.*

CHARLES M. BEATTY,
                    *Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 02-00030-001—Robert Leon Jordan, District Judge.

Argued: October 13, 2010

Decided and Filed: April 22, 2011

Before: MERRITT, GIBBONS, and COOK, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** John E. Eldridge, ELDRIDGE & GAINES, PLLC, Knoxville, Tennessee, for Appellant. D. Gregory Weddle, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee. **ON BRIEF:** John E. Eldridge, ELDRIDGE & GAINES, PLLC, Knoxville, Tennessee, for Appellant. D. Gregory Weddle, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellee.

———————————

**OPINION**

———————————

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Charles Michael Beatty seeks review of the district court's decision to deny him unconditional release from civil commitment under 18 U.S.C. § 4243(f). He argues that he no longer suffers from a "mental disease or defect," and therefore the government can no longer hold him

1

under the civil commitment statute provided in 18 U.S.C. § 4243.  For reasons explained below, we affirm the district court's decision.

I.

This court previously has described the facts surrounding Beatty's civil commitment, *United States v. Beatty* (*Beatty I*), 111 F. App'x 820 (6th Cir. 2004), so we only briefly summarize the record here.

A.

On February 5, 2002, Beatty robbed a branch of the Branch Banking and Trust Company in Knoxville, Tennessee.  While holding a small knife, Beatty demanded two one hundred dollar bills from a teller.  He drove to and escaped from the robbery in a new truck he had stolen from a local dealership during a test drive, which he then drove to Florida.  Beatty was indicted for bank robbery and transporting a stolen vehicle in interstate commerce.  Beatty waived his right to a jury trial.  On the day of his trial, the parties entered into an agreed-upon factual basis.  Based on the factual basis and a pretrial psychological evaluation, the court found Beatty not guilty by reason of insanity, a finding which the government did not oppose.

Pursuant to 18 U.S.C. §§ 4243(a) and 4247(b), Beatty was remanded and transported to a federal medical facility for a psychological examination to determine whether he posed a danger to others or should be released without conditions.  After receiving a series of medical reports disagreeing in their respective diagnoses of Beatty, the district judge concluded that Beatty had not successfully shown that he no longer posed a risk to others as a result of mental disease or defect.  The district court ordered that Beatty be remanded to the custody of the Bureau of Prisons for treatment under 18 U.S.C. § 4243(e).  Beatty appealed the order to this court.  *Beatty I*, 111 F. App'x at 824.  We affirmed the district court order.  *Id.* at 826.

Since that decision, Beatty has been conditionally released a number of times, pursuant to § 4243(e), but has never successfully complied with the conditions of his release.  Beatty was first conditionally released while his case was pending before this

court in March 2004.  As part of the conditions, he was required to enter a substance treatment center and then reside at a halfway home for up to 180 days; he was also required to participate in a regimen of outpatient mental health care, including using medication as prescribed to him.  Beatty was also ordered to abstain from the use of alcohol, illegal narcotic substances, and drugs, and to submit to testing at the direction of his probation officer.  His conditional release was revoked in November 2004 after Beatty admitted to his probation officer that he had used narcotics and had not gone to the prescribed treatment programs.

Beatty was again ordered conditionally released in November 2006.  After testing positive for narcotics use on two separate occasions, Beatty's supervision was modified in May 2007 to include six months' home confinement with electronic monitoring.  In July 2007, Beatty again violated the conditions of his release, this time stealing his fiancée's bank card, withdrawing approximately $400, and using the money to purchase cocaine for his own use.  The district court consequently modified the conditions of Beatty's release in July 2007, requiring him not only to refrain from drug use but to also "reside for up to 180 days at Midway Sanction Center beginning on August 1, 2007, and . . . observe the rules of that facility."  Beatty twice tested positive for marijuana in September 2007, and in October 2007 he was discharged from the Midway Sanction Center for not following the rules of the facility.  At a hearing in November 2007, the district court again ordered Beatty's conditional release revoked.  In May 2009, the court ordered that Beatty again be conditionally released.[1]  He now challenges this order.

## B.

Over the course of Beatty's criminal proceedings and civil commitment, he has received a number of medical evaluations that have drawn somewhat inconsistent medical diagnoses.  In *Beatty I*, this court noted that "[i]dentifying Mr. Beatty's true

---

[1]In November 2009, Beatty again violated the conditions of release, admitting to his parole officer that he had used cocaine and marijuana and had left the rehabilitation program he was required to attend. After modification of his conditions, Beatty was once again released.  Though Beatty's conditions have changed since the appeal, the issue is not moot because Beatty challenged the still relevant question of whether *any* conditions can be attached to his release. *See Beatty I*, 111 F. App'x at 824 n.4.

diagnoses has been difficult.  Over the past seven years he has received numerous psychiatric diagnoses[] including Obsessive-Compulsive Disorder; Impulse Control Disorder[;] Bipolar Disorder; Manic with Rapid Cycling; Dysthymia[;] Borderline Personality Traits with Narcissistic Features; Antisocial Personality Disorder; and Schizoaffective Disorder." 111 F. App'x at 822 (internal citations omitted).  Since then, however, psychiatric assessments of Beatty's medical condition have been more consistent.  Recent evaluations generally agree that Beatty today suffers from the combination of (1) Antisocial Personality Disorder, (2) Narcissistic Personality Disorder, and (3) narcotics dependence, namely cocaine and marijuana dependence.  The district court accepted these general medical diagnoses, and we do the same.

## II.

The Insanity Defense Reform Act of 1984 (IDRA) established a "general federal civil commitment procedure . . . to ensure that an insanity acquittee would receive proper care and treatment."  *Shannon v. United States*, 512 U.S. 573, 575 (1994).  Under that procedure, a defendant found not guilty by reason of insanity is held in custody pending a court hearing; at the conclusion of the hearing, the district court determines whether the defendant should be hospitalized or released. 18 U.S.C. §§ 4243(d), (e); *see also Shannon*, 512 U.S. at 577.  An insanity acquittee whose offense involved bodily injury to another or serious damage to another's property, or the substantial risk thereof, must demonstrate by clear and convincing evidence that "his release would not create a substantial risk of bodily injury to another person or serious damage to property of another due to a present mental disease or defect" before he is discharged.  18 U.S.C. §§ 4243(d), (f); *see also Shannon*, 512 U.S. at 581–82.

An acquittee can prove entitlement to discharge by establishing by clear and convincing evidence that he (1) has recovered his sanity or (2) is no longer dangerous. *Foucha v. Louisiana*, 504 U.S. 71, 77 (1992); *Jones v. United States*, 463 U.S. 354, 368

(1983).  Beatty's appeal focuses on the first argument.[2]  He argues that suffering from a combination of Antisocial Personality Disorder and narcotics dependency does not amount to suffering from a "mental disease or defect" under § 4243.  His argument is based on comments made in the recent reports of the medical staff at the Federal Medical Center at Rochester ("FMC Rochester")—where Beatty was most recently committed—that Antisocial Personality Disorder is "not typically categorized as a 'mental disease or defect,'" in their experience.

Beatty's first argument is that the district court erred in implicitly assuming that Antisocial Personality Disorder can be a mental disease or defect.[3]  Under § 4243, Beatty bears the burden of proving this proposition by clear and convincing evidence, and given this high standard, we find that Beatty has not proved that, as a rule, Antisocial Personality Disorder is not a mental disease or defect.  As an evidentiary matter, Beatty offers no support other than the observation by the FMC Rochester staff that Antisocial Personality Disorder is "typically" not considered a mental disease or defect.  Even if we accepted this comment as true, this generalization would not prove by clear and convincing evidence that Antisocial Personality Disorder can never form part of the basis for civil commitment.  The FMC Rochester reports are equivocal and only refer to the "typical" case.  FMC Rochester's risk assessment panel wrote "[i]f the Court continues to categorize Antisocial Personality Disorder as a mental disease or defect, it is the panel's opinion that Mr. Beatty's unconditional release from custody would create a risk of bodily injury to another person or damage to the property of others"; but "[i]f the Court chooses to no longer classify Antisocial Personality Disorder as a mental disease or defect, it is recommended that § 4243 commitment be dropped."

---

[2]Beatty's only argument as to dangerousness is that the district court found that he posed a "chronic risk" to others and not a "substantial risk."  This argument is not colorable.  The plain meaning of "chronic" is "marked by frequent recurrence," which therefore is substantial.  Beatty offers no explanation as to how these words are not synonymous.

[3]Beatty correctly points out that the district court did not explicitly say in the appealed order that Beatty suffers from a mental disease or defect.  Given the history of this case and the district court's prior orders, it is clear that the court found Beatty to suffer from a mental disease or defect at the time of entry of the order.

Thus, the panel itself recognized that the court would resolve the issue. Its comments cannot be taken as a definitive opinion that would satisfy Beatty's burden of proof.

The district court considered the Rochester psychiatric report in its entirety along with Beatty's cocaine and marijuana abuse. It also reviewed his unsuccessful history of release under supervision. The court found that the combination of Beatty's continued drug use and his Antisocial Personality Disorder make Beatty a "risk for further violence in the community." It described Beatty as "at a chronic risk of bodily injury to another person."

We find no clear error in the district court's determination that Beatty had not established his entitlement to unconditional release. *See Beatty I*, 111 F. App'x at 826.

In addition to his argument about the record here, Beatty faults the district court for relying on *United States v. Murdoch*, 98 F.3d 472 (9th Cir. 1996). Murdoch made arguments similar to those made by Beatty with respect to whether his personality disorder qualified as a mental disease or defect. The Ninth Circuit affirmed the district court's determination of a mental disease or defect based on evidence that Murdoch would face the same type of stress on release that led to his prior violent behavior. The district court in this case drew an analogy between Murdoch and Beatty, in that, if Beatty were released without condition, he would be unable to avoid the use of the drugs that had contributed to his inability to control his behavior and the resulting danger to others. Although *Murdoch* is not binding precedent, the district court was correct to consider it instructive, and the district court's analogy was helpful to the analysis in justifying Beatty's release.

## III.

For these reasons, we affirm the district court's denial of Beatty's unconditional release under § 4243.