**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 13-6869**

─────────────

UNITED STATES OF AMERICA,

        Petitioner – Appellee,

    v.

THOMAS CONROY,

        Respondent - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  W. Earl Britt, Senior District Judge.  (5:06-hc-02050-BR)

─────────────

Submitted:  November 19, 2013    Decided:  November 22, 2013

─────────────

Before GREGORY, SHEDD, and WYNN, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Thomas P. McNamara, Federal Public Defender, Joseph Bart Gilbert, Assistant Federal Public Defender, Susan Umstead, Research & Writing Attorney, Raleigh, North Carolina, for Appellant.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Jennifer D. Dannels, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Thomas Conroy appeals the district court's order continuing his civil commitment pursuant to 18 U.S.C. § 4246 (2012). As set forth below, we affirm.

I.

In March 2005, the United States District Court for the Central District of California found Conroy incompetent to stand trial on a charge of mailing a threatening communication, in violation of 18 U.S.C. § 876(c) (2012). Thereafter, the California district court ordered that Conroy be transported to the Bureau of Prisons' facility at Butner, North Carolina, and evaluated for civil commitment pursuant to 18 U.S.C. § 4246.[1] Later, the Government filed a certificate of mental disease or defect and dangerousness in the United States District Court for the Eastern District of North Carolina.[2] That court—the district

---

[1] "Section 4246 applies to individuals who are due for release from federal custody either because they have been found not competent to stand trial, because the charges against them have been dropped solely because of mental illness, or because they have completely served their sentences of imprisonment." United States v. Baker, 45 F.3d 837, 840 n.1 (4th Cir. 1995).

[2] Under § 4246(a), the director of the facility in which a person found incompetent to stand trial is hospitalized may certify that the person is "presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available," and the director "shall transmit the certificate to the clerk of the (Continued)

2

court below—later held a § 4246 hearing to determine Conroy's mental condition. After finding by clear and convincing evidence that Conroy was then suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, the district court committed him to the care and custody of the Attorney General under 18 U.S.C. § 4246(d) by order dated July 11, 2006.

On June 20, 2007, the district court ordered Conroy's conditional release to a group housing facility in Durham, North Carolina. In July 2010, the district court revoked Conroy's release, and Conroy was returned to FMC Butner.

In August 2012, the Warden of FMC Butner filed an annual forensic report with the district court in accordance with 18 U.S.C. § 4247(e)(1)(B) (2012) concerning Conroy's mental condition and the need for his continued commitment. The report was signed by FMC Butner staff psychiatrist Dr. Ralph Newman and staff psychologist Dr. Adeirdre Riley ("the FMC staffers") and contained references to Conroy's relevant background history, a

---

court for the district in which the person is confined." 18 U.S.C. § 4246(a). Because Conroy was then hospitalized at the Federal Medical Center in Butner, North Carolina ("FMC Butner"), the certificate was filed in the Eastern District of North Carolina.

3

mental health diagnosis, and a risk assessment pursuant to § 4246. The annual report reflects that Conroy was diagnosed as suffering from Schizophrenia, Undifferentiated Type, and that, in the year since FMC Butner's last update to the district court, his mental status had deteriorated. In this regard, the report reflects that Conroy demonstrated a "prominent thought disorder" and voiced the "primary delusion" that a device able to control his behavior had been inserted into his neck when he was a child. The FMC staffers opined that Conroy's judgment and insight into his condition were impaired and noted that he viewed medication as having no effect on himself.

The report further reflects, however, that, in the five months preceding its filing, Conroy's "mental status" had "slowly improved," as evidenced by a decrease in his preoccupation with auditory hallucinations and a decrease in references to the device that he believed had been inserted into his neck. Although the report reflects that Conroy had complied with FMC Butner's regulations and had received no incident reports or disciplinary actions in the three months preceding the filing of the report, he also chose not to participate in therapeutic groups or an institutional job assignment, and he continued to struggle with anxiety and restlessness. The FMC staffers opined that Conroy's prognosis for additional improvement was "guarded."

4

The report further relates that Conroy exhibited several factors associated with a risk of future violent behavior, including: his past history of violence; his schizophrenia diagnosis and history of acting in response to his persecutory delusions of being followed or surveilled; his history of gun possession; his lack of a social support system; and the deterioration in his mental health status. In light of these factors, Conroy's "poor" insight into his condition, and the fact that delusions, hallucinations, and a thought disorder remained, the FMC staffers opined that Conroy was not an "appropriate" candidate for conditional release into the community.

The district court later granted Conroy's motions for a hearing to determine whether he should be discharged from commitment under § 4246 and for the appointment of an independent mental health examiner. The independent examiner, psychiatrist Dr. Holly Rogers, completed a written report after evaluating Conroy and considering his medical chart, prison file, the annual report, Rogers's prior evaluation of Conroy, and a conditional release violation report. Rogers opined that, although the most accurate diagnosis for Conroy was Schizoaffective Disorder, Bipolar Type, the difference between this diagnosis and a diagnosis of Schizophrenia was "somewhat academic," as the treatment for both conditions would be the

same.  In Dr. Rogers's view, there was evidence in Conroy's case both for and against his posing a risk of future dangerousness. Factors that increased his risk of future dangerousness included: the nature of his illness, which Rogers characterized as a "difficult to treat, chronic psychotic illness"; Conroy's level of insight into his illness, which Rogers opined was associated with an unlikelihood that he would continue treatment of his own accord; Conroy's history of acquiring weapons and acting on his paranoid beliefs; and his lack of a relationship with family members willing to care and take responsibility for him.  Factors that mitigated against his risk of future dangerousness included: his intelligence and capability for self-sufficiency when his psychotic symptoms were under control; and his lack of a substance abuse history.  Dr. Rogers opined, however, that these mitigating factors did not outweigh the risk factors and that Conroy thus still was suffering from a mental disease and, as a result of the disease, presented a substantial risk of future dangerousness to others or their property such that he continued to meet the criteria for continued commitment under § 4246.

After a hearing at which Conroy testified, Dr. Newman testified as an expert in the field of forensic psychiatry, and the annual report and Dr. Rogers's report were admitted into evidence, the district court determined that Conroy continued to

6

meet the criteria for care and treatment under § 4246 and ordered Conroy's continued commitment. Conroy now appeals, arguing that the district court erred in ordering his continued commitment.

## II.

### A.

A person committed under 18 U.S.C. § 4246 may, through his counsel or legal guardian, file a motion for a hearing to determine whether he should be released. 18 U.S.C. § 4247(h). The district court that ordered the commitment may discharge the person committed if it finds, by a preponderance of the evidence, that the person has recovered from his mental disease or defect to such an extent that his release would no longer create "a substantial risk of bodily injury to another person or serious damage to property of another." Id. § 4246(e)(1)-(2). The committed person seeking discharge bears the burden of proving he has so recovered. Sealed Appellee v. Sealed Appellant, 665 F.3d 620, 623 & n.4 (5th Cir. 2011); United States v. Evanoff, 10 F.3d 559, 563 (8th Cir. 1993).

The district court's finding that continued commitment is warranted is a factual determination this court will not overturn unless clearly erroneous. United States v. Cox, 964 F.2d 1431, 1433 (4th Cir. 1992). A finding is clearly erroneous "when, although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Harvey, 532 F.3d 326, 336-37 (4th Cir. 2008) (internal quotation marks omitted). However, "if the district court's account of the evidence is plausible in light of the record viewed in its entirety," this court will not reverse the district court's finding even if it would have "decided the fact differently." United States v. Stevenson, 396 F.3d 538, 542 (4th Cir. 2005) (internal quotation marks and alteration omitted).

B.

We conclude that the district court's findings justifying Conroy's continued commitment were not clearly erroneous. First, the FMC staffers and Dr. Rogers—through their testimony and reports—agreed that Conroy suffers from a mental illness, disagreeing only on the exact classification of the disease. Although the FMC staffers' diagnosis differed from that given by Dr. Rogers, she herself characterized the difference as "somewhat academic," and Dr. Newman stated during his hearing testimony that both schizophrenia and schizoaffective disorder would be treated in "virtually the same" manner and had similar prognoses. While Conroy argues on appeal that the preponderance of the evidence produced at the hearing showed that he had recovered from his schizophrenia to

8

the extent that his release would not create a substantial danger to the community, he makes this argument in a wholly conclusory fashion. Moreover, after review, we conclude that nothing in the record contradicts the opinions that Conroy continues to suffer from a mental disease or defect. In the hearing below, Conroy offered no testimony or other evidence suggesting that he had recovered from his illness, and nothing else in the record on appeal suggests that Conroy has recovered from his illness. Accordingly, the district court did not clearly err when it found that Conroy continued to suffer from a mental disease or defect.

Second, the totality of the evidence before the district court established that, in light of Conroy's mental illness, his release would create a substantial risk of bodily injury to another person or serious damage to property of another. In support of their opinion, the FMC staffers reported that Conroy exhibited several factors associated with a risk of future violence, and, during his hearing testimony, Dr. Newman reiterated his conclusion in that report that Conroy still met the criteria under § 4246 for continued commitment. Dr. Rogers also opined that Conroy exhibited factors associated with a risk of future violence, that the mitigating factors present in his case did not outweigh the risk factors, and that Conroy thus met the criteria under § 4246 for continued commitment.

The factors relied upon by these professionals are among those typically considered by mental health professionals in conducting risk assessments under § 4246. E.g., United States v. Ecker, 30 F.3d 966, 970 (8th Cir. 1994); Cox, 964 F.2d at 1433. Thus, the evidence before the district court established that Conroy's release would create a substantial risk of bodily injury to another person or serious damage to the property of another.

Conroy responds by arguing that the finding in the annual report of "possible dangerousness" is based on "conjecture and speculation" and thus is not sufficient to support a conclusion of substantial risk under § 4246. Conroy emphasizes that Drs. Newman and Rogers—through their testimony and reports—made note of his intelligence and capability for self-sufficiency, his lack of a recent, significant history of substance abuse, his improvements in insight into his illness, institutional adjustment, and compliance with his medication regimen, and his demonstrated ability to live a period of time free from violence against others at FMC Butner. Conroy, however, misstates the record. The annual report does not make a finding of "possible dangerousness" as Conroy claims. Rather, the report reflects the opinion that Conroy's continued commitment under § 4246 was appropriate in light of several risk factors. Moreover, § 4246's dangerousness evaluation and

10

determination require evaluators and the district court to consider the committed person's "entire behavioral and psychological profile." United States v. Williams, 299 F.3d 673, 677 (8th Cir. 2002); see Cox, 964 F.2d at 1433. Conroy's intelligence, capabilities, and improvements were but pieces of the data among the broad spectrum of information properly considered.

Because the evaluators in this case considered a host of relevant factors convincing them that Conroy still was suffering from a mental disease or defect to the extent that his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, the evidence cleared the hurdle that Conroy's release presented a "substantial risk." 18 U.S.C. § 4246(d). Accordingly, Conroy did not meet his burden to show that he had recovered, and the district court did not clearly err in relying on the uncontroverted opinion evidence to find that Conroy continued to satisfy the criteria for civil commitment under § 4246.

### III.

We therefore affirm the district court's order continuing Conroy's civil commitment. We dispense with oral argument because the facts and legal contentions are adequately

11

presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED