**IN THE COURT OF APPEALS OF IOWA**
No. 20-1683
Filed August 18, 2021

**IN THE MATTER OF D.S.,
Alleged to Be Seriously Mentally Impaired,**

**D.S.,**
        Respondent-Appellant.

_____


        Appeal from the Iowa District Court for Johnson County, Lars Anderson,

Judge.


        The respondent appeals the district court decision finding he was seriously

mentally impaired.  **AFFIRMED.**


        Emily S. Rebelskey, Iowa City, for appellant.

        Thomas J. Miller, Attorney General, and Gretchen Kraemer, Assistant

Attorney General, for appellee State.


        Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

D.S. appeals the district court decision finding he was seriously mentally impaired. He challenges only the court's finding that he presented a danger to himself or others. We find there is sufficient evidence in the record to support the findings of the district court. Accordingly, we affirm.

## I.     Background Facts & Proceedings

On August 8, 2019, police officers brought D.S. to the emergency department of a hospital because he was exhibiting symptoms of psychosis. He assaulted a hospital employee in the emergency department. D.S. has been diagnosed with schizophrenia and has a long history of treatment for his condition. He also has an established pattern of noncompliance with medication. D.S. has diabetes and hypertension, which require medical treatment.

Following an application for commitment under Iowa Code chapter 229 (2019), a physician opined that D.S. was likely to injure himself or others. In a mental-health report dated September 5, a physician stated:

> Prior to admission, [D.S.] demonstrated aggressive behavior towards hospital staff. He remains paranoid and delusional regarding the intentions of his health care providers and the purpose of his prescribed medications. He has questioned whether or not his mother is an imposter and is paranoid about other family members (cousin) harming him in bizarre ways. At this time, his ongoing psychosis prevents him from safely discharging from the hospital.

Another physician gave a similar report on September 30, and added, "In the past, he has discontinued his diabetes and high blood pressure medications when outside of the hospital; this further indicates that he is a danger to himself."

D.S.'s condition improved while he was on medication. On November 18, he was released to outpatient treatment. After just several months, however, D.S. quit taking his medication and his condition deteriorated.

On July 17, 2020, D.S. was recommitted for inpatient treatment. A mental-health report stated that "[d]ue to the patient's disorganized thought process, reported paranoia, and unstable state, he could be a harm to himself or others." On August 28, a physician stated:

> [D.S.] lacks insight into his disease and would not take his medications if discharged. When he is not on medication, he is at risk for self-neglect secondary to poor adherence to diabetes and hypertension medication. He also becomes paranoid and disorganized and could harm another or provoke harm against him due his speech or actions.

The physician further noted that D.S. had "assaulted a nursing assistant in a prior admission."

A hearing was held before a judicial hospitalization referee on September 11. The referee found D.S. was diagnosed with schizophrenia, was treatable with medication, and was a danger to himself or others "due to his persistent symptoms, poor insight and lack of judgmental capacity to make reasonable decisions for his own care." The referee concluded D.S. should not be discharged from inpatient treatment.

D.S. appealed the decision of the judicial hospitalization referee. Before the hearing, D.S. was placed in a residential facility. A telephone hearing was held on November 6. Kendra Walker, a psychiatric mental-health nurse practitioner, testified D.S. "has paranoid thinking and he's delusional." She stated D.S. did not believe he had a mental illness or that he needed medication. Walker testified that

if D.S. was released "he would not continue his medication and his paranoid thinking would increase and become worse." Dr. William Coryell, a psychiatrist, testified D.S. had a history of medication noncompliance, including medication for diabetes. He stated that even while taking medication, D.S. was "quite delusional."

The district court found D.S. had a mental illness—schizophrenia. Also, D.S. did not believe he had a mental illness or that he needed treatment. The court found, "While he has not been aggressive to others recently (while receiving his medications in a stable setting) he has been found to be so previously." In addition, when not taking his psychiatric medications, D.S. quit taking medicine to treat his diabetes. The court concluded D.S. should remain at the residential facility. D.S. appeals the district court's decision.

**II. Standard of Review**

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1) (2020). "Clear and convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.*, 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted).

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.*, 574 N.W.2d 340,

342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

**III. Merits**

In order to be considered seriously mentally impaired under section 229.1(20), there must be clear and convincing evidence the respondent (1) has a mental illness; (2) lacks "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) is "likely, if allowed to remain at liberty, to inflict physical injury on 'the person's self or others,' to inflict serious emotional injury on those close to the person, be unable to satisfy the person's physical needs," or have "a lack of compliance with treatment."[1] Iowa Code § 229.1(20).

---

[1] Iowa Code section 229.1(20) provides:
> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>     a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>     b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>     c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
>     d. Has a history of lack of compliance with treatment and any of the following apply:
>         (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
>         (2) Lack of compliance has resulted in one or more acts of serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

D.S. only challenges the third element. He asserts that the State did not present clear and convincing evidence to show he is a danger to himself or others. He claims there is insufficient evidence to show he engaged in a recent, overt act demonstrating dangerousness. He points out that the court found he had not been aggressive recently. D.S. contends the evidence that he assaulted someone in August 2019 or became medication noncompliant in July 2020 is not sufficiently recent to justify his ongoing commitment.

The term "likely" in section 229.1(20) is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980) (citation omitted). "[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (internal quotation marks omitted). The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that it is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). Threats have been held to be sufficient indicia to support commitments. *B.B.*, 826 N.W.2d at 433.

When considering whether there is evidence of a "recent, overt act," we may consider a person's behavior and delusions "in the context of the overall course of his schizophrenia." *In re S.M.*, No. 17-1591, 2018 WL 1182765, at *3 (Iowa Ct. App. Mar. 7, 2018). The Iowa Court of Appeals quoted *United States v. Evanoff*, 10 F.3d 559, 563 (8th Cir. 1993), for the statement, "[T]he recency or remoteness

of any particular activity simply affects the weight the court will give to that particular evidence." *Id.* Thus, although the patient committed violent acts many years in the past, "his recent delusions and threats" "were sufficient to prove dangerousness even if he did not have the opportunity to act on them." *Id.*

D.S. was aggressive in the past, indicating he presented a risk of physical harm to others when not taking medication. At the time of the hearing, D.S. had paranoid thinking and he was delusional. D.S.'s condition could lead him to harm someone else or to provoke someone to harm him due to his paranoid thinking and delusions. The court could consider the fact he had assaulted someone in the past, and the remoteness of the incident simply affected the weight to be given to the evidence. *See id.*

Furthermore, the evidence showed that at the time of the hearing, D.S. did not think he had a mental illness or that he needed to take medication for his condition. In the past, when D.S. was not in inpatient treatment, he would quit taking his psychiatric medication. This led to D.S.'s failure to take medication necessary to treat his diabetes. D.S.'s lack of compliance with treatment has been significant concerning the need for emergency hospitalization in the past, as exemplified by the present proceedings.

Testimony provided at hearing cited to D.S.'s past admissions, which all followed the same course, that "he does not last too long out of—outside of a supervised setting." D.S. has had seven admissions for mental-health concerns. The doctor noted that D.S. would go from assisted living and then gradually get worse and not comply with his medications, with his behavior getting more bizarre and then showing up in the hospital with odd complaints. *See In re J.R.*, No. 17-

0449, 2018 WL 2084819, at *2 (Iowa Ct. App. May 2, 2018) (citing testimony of treating psychiatrist and stating "[a]lthough [certain] behaviors are not currently occurring and have not occurred in some time, the evidence shows they are likely to occur again if [the] commitment was not continued") *see also* Iowa Code § 229.1(20)(d)(1).

The doctor further opined there was not a less restrictive setting that could provide adequate supervision for D.S.'s treatment and this "might be the best we can hope for." In addition, the lack of compliance could result in serious physical injury to D.S. as a result of his failure to take medication for diabetes. *See* Iowa Code § 229.1(20)(d)(2); *In re S.B.*, No. 14-1954, 2016 WL 740324, at *3 (Iowa Ct. App. Feb. 24, 2016) (finding patient's failure to manage her diabetes medication jeopardized her health and was a factor in satisfying the dangerousness component in civil commitment proceedings).

We affirm the district court's conclusion that D.S. was seriously mentally impaired and should remain in a residential facility.

**AFFIRMED.**